BENJAMIN M. MILLARD et al., Individually and as Limited Partners on Behalf of Themselves and all Other Persons Similarly Situated, Respondents, *v.* NEWMARK & COMPANY, a Partnership Composed of AARON GURAL and Others, Appellants.

First Department, January 13, 1966.

*Milton Pollack* of counsel (*Samuel N. Greenspoon* and *Francis E. Koch* with him on the brief), for appellants.

*Sheldon H. Elsen* of counsel (*Jerome T. Orans* and *Gerald E. Paley* with him on the brief; *Orans & Elsen,* attorneys), for respondents.

STEVENS, J. Defendants appeal from an order entered July 8, 1965, insofar as such order denied defendants' motion to dismiss the complaint and each cause of action therein, and to strike certain allegations thereof, and further denying defendants' motion for reargument.

Plaintiffs are 32 limited partners, or approximately 30% of a total of about 100 such partners, of Terrace Associates, Ltd. (hereinafter Terrace). They bring this action individually and as limited partners on behalf of themselves and all others similarly situated, and in the right of Terrace.

The individual defendants Maurice S. Handler, Horodas and Karpas are general partners of Terrace. Defendant Newmark & Company (Newmark) is a New York partnership composed of six of the individual defendants, not including the three persons above named, though there is alleged to be a degree of relationship between at least two of them and certain members of the partnership. Defendant Austin Newmark, Inc. (Austin Newmark) is a New York corporation largely owned by Newmark.

On or about October 24, 1957, Newmark contracted to purchase the Terrace Motor Hotel (the Motel) in Austin, Texas.

The contract was assigned to defendants Maurice S. Handler and Karpas who, as landlords, entered into a 15-year lease of the Motel with Newmark as tenant, at an annual base rental of $330,000. The contract of purchase was assigned to Terrace which took title to the Motel in May, 1958. At some point the lease was taken over by the Sheraton interests (Sheraton) which operated thereunder until about July, 1959, when it discontinued operations and transferred the lease to Austin Newmark. A prospectus was issued to the public in January, 1958 by Newmark, a real estate syndication of the Motel was worked out, and these plaintiffs and others became limited partners in the venture. Sometime about May, 1964 the venture failed and there was a foreclosure of the Terrace partnership property by the mortgagee.

This action was commenced in July, 1964. The complaint sets forth five causes of action charging false misrepresentations, fraud and misconduct by the general partners and others, and sought restitution of assets to Terrace, damages for wrongs done to Terrace and damages for wrongs done to plaintiffs as investors. Plaintiffs purport to bring a class action on behalf of all the limited partners, including those not named or joined. The false representations were allegedly contained in the printed prospectus. Defendants moved to dismiss the representative and derivative phases of the complaint alleging lack of capacity, and also contending certain parts of the first three causes of action were time-barred. Defendants also sought an amended complaint with causes separately stated and numbered.

Without attempting to analyze in detail the various charges, basic to the disposition of this appeal is resolution of the question — may the limited partners maintain this action as a class action?

Limited partnerships were unknown to the common law. They are solely creatures of statute (*Lanier* v. *Bowdoin,* 282 N. Y. 32; *Ruzicka* v. *Rager,* 305 N. Y. 191). " The object to be accomplished * * * is to protect the special partner, and exempt him from a general liability and to place his capital alone at the peril of the business (*Casola* v. *Kugelman,* 33 App. Div. 428, 433, affd. on opinion of PATTERSON, J. below, 164 N. Y. 608) " (*Lanier* v. *Bowdoin, supra,* p. 38). " Limited partners as such shall not be bound by the obligations of the partnership " (Partnership Law, § 90), and they have only such rights, duties, obligations, etc., as the statute may provide (Partnership Law [Limited Partnerships], §§ 90-115). It should be noted that a limited partner is expressly given " (1) the same rights as a general partner to (a) Have the partnership books kept at

the principal place of business of the partnership, and at all times to inspect and copy any of them. (b) Have on demand true and full information of all things affecting the partnership, *and a formal account of partnership affairs* whenever circumstances render it just and reasonable, and (c) Have dissolution and winding up by decree of court. (2) A limited partner shall have the right to receive a share of the profits or other compensation by way of income, and to the return of his contribution as provided in sections one hundred and four and one hundred and five of this article '' (Partnership Law, § 99; emphasis supplied). Section 104 deals with the compensation of a limited partner, while section 105 deals with the question of withdrawal or reduction of a limited partner's contribution.

From the foregoing it is obvious that a limited partner is not in the hopeless position where he must only suffer in silence when an alleged wrong occurs. He has a right of full and free access to information contained in the partnership books, and of all things affecting the partnership, as well as a right to a formal accounting. Even a stockholder has no right to an accounting but must have recourse to a derivative action on behalf of and for the benefit of the corporation. Of course a limited partner, unlike a stockholder, has no right to a counsel fee if he prevails in the action. A limited partner also has a right to dissolution in addition to his rights as an individual against third parties. In brief, a limited partner has such rights and only such rights as the law and his contract afford (cf. *Herrick* v. *Guild,* 257 App. Div. 341).

Section 115 of the Partnership Law which provides: " A contributor, unless he is a general partner, is not a proper party to proceedings by or against a partnership; except where the object is to enforce a limited partner's right against or liability to the partnership." It does not restrict or limit the rights enumerated in section 99. It relates to claims by or against the partnership, and declares the circumstances under which a limited partner may be or may become a necessary or proper party to litigation. Even though a limited partnership may be regarded as a distinct entity for the purposes of pleading (*Ruzicka* v. *Rager, supra,* p. 197), and CPLR 1025 provides, is no right in a limited partner to sue in a derivative capacity in part: " Two or more persons conducting business as a partnership may sue or be sued in the partnership name," there on behalf of the partnership (Partnership Law [Limited Parta general partner unless, in addition to the exercise of his nership], § 115). Nor does a limited partner " become liable as rights and powers as a limited partner, he takes part in the

control of the business '' (Partnership Law, § 96; cf. *Executive Hotel Assoc.* v. *Elm Hotel Corp.*, 41 Misc 2d 354, affd. 43 Misc 2d 153).

Upon withdrawal or reduction of his contribution, '' In the absence of any statement in the certificate to the contrary or the consent of all members, a limited partner, irrespective of the nature of his contribution, has only the right to demand and receive cash in return for his contribution '' (Partnership Law, § 105, subd. [3]; see, also, §§ 99, 112, 115). Only a general partner is authorized to act in behalf of the partnership (*Merrick* v. *New York Subways Adv. Co.*, 14 Misc 2d 456, 458; *Yeager* v. *Transvision, Inc.*, 277 App. Div. 986).

While a limited partner has been compared to a shareholder of a corporation (*Klebanow* v. *New York Produce Exch.*, 344 F. 2d 294) and has been characterized as having '' quasi-shareholder status '' (*Ruzicka* v. *Rager, supra*, p. 198) the fact remains that the Legislature has not seen fit to endow him with the status of a shareholder, or to confer upon him the rights, powers and obligations of a shareholder. It is not part of the judicial function to do so. For an extensive discussion of the *Klebanow* case and the status of limited partners see '' Standing of Limited Partners to Sue Derivatively '' (65 Col. L. Rev., 1463). The writer discusses the analogy of a limited partner as a creditor as well as the contrasting view of a limited partner as a stockholder or trust beneficiary. He asserts, however, '' the limited partner is perhaps most aptly analogized to the holder of preferred stock whose capacity to sue derivately has been widely accepted '' (p. 1479). However, it should be borne in mind, as previously pointed out, that the Legislature which created the limited partnership took great care to enumerate the rights, privileges and benefits accruing to a limited partner. While allowing certain economic advantages to such partner, he is not at the same time exposed to the unlimited liability of a general partner. In the corporate form the corporation is an entity recognized by law for the purpose of bringing or defending an action as distinct from the individuals who comprise it. New York has long recognized the right of shareholders to maintain a derivative action. The contention that the limited partnership should be recognized as analogous to the corporate entity by a similar right in the contributor or limited partner to maintain a derivative action is presumably based on an equitable concept in positive law. The rights of the limited partner are increased but there is no corresponding increase in responsibility or potential liability.

The rights of a limited partner have been defined with precision in the Partnership Law heretofore referred to. CPLR 1005 has neither extended nor limited those rights. Each limited partner has a right to any share of the profits and to a return of his contribution (Partnership Law, § 99). In the case before us plaintiffs seek general damages for all limited partners (not a right or incident of the relationship), the return of their investment, an accounting, and expenses. The nature of the action precludes any conclusion that the " question is one of common or general interest " (CPLR 1005, subd. [a]) or that the interests of each and every limited partner are common or identical so as to authorize a single common action (*Onofrio* v. *Playboy Club of N. Y.*, 15 N Y 2d 740; *Society Milion Athena* v. *National Bank of Greece*, 281 N. Y. 282; *Brenner* v. *Title Guar. & Trust Co.*, 276 N. Y. 230; cf. *Gaynor* v. *Rockefeller*, 15 N Y 2d 120). If there was wrongdoing each limited partner suffered a separate wrong and has a separate cause of action.

The basis for the alleged misrepresentations as the inducing cause for investment is the prospectus which was circulated publicly. Aside from the fact that such prospectus need not have been the inducing cause for each and every one of the limited partners or influenced each to the same extent, there is grave doubt that a class action for fraud could be premised thereon (*Coolidge* v. *Kaskel,* 16 N Y 2d 559). If there was fraud in the inducement, the wrong done was to each limited partner individually, and his cause of action is separate and individual (*Brenner* v. *Title Guar. & Trust Co., supra,* p. 233; *White* v. *Ludwig,* 32 Misc 2d 120; cf. *Medvec* v. *333 East 69th St.,* 14 A D 2d 849).

Respondents cite and apparently place great reliance upon *Executive Hotel Assoc.* v. *Elm Hotel Corp.* (41 Misc 2d 354, affd. 43 Misc 2d 153); *E. H. A. Successor Corp.* v. *Vogel* (21 A D 2d 176) and *Klebanow* v. *New York Produce Exch.* (*supra*) so it might be well to examine briefly those cases. In *Executive Hotel Assoc.* v. *Elm Hotel,* the plaintiff landlord instituted a rent nonpayment proceeding against Elm as tenant. The plaintiff was a limited partnership and one Vogel, chairman of a committee of the limited partners, signed the petition which instituted the proceeding. The limited partners under the syndication were to receive dividends in the form of rent from Elm. One Glatstian was the sole general partner of the limited partnership and was also president and majority stockholder of Elm, the defaulting sublessee of the limited partnership. By Glatstian's machinations the limited partnership had relinquished obligations and security in favor of Elm and

the limited partnership had been stripped of its sole asset, the leasehold. The court merely held: " Under the flagrant and singular circumstances revealed '' (p. 359) the committtee chairman was a person entitled to apply under subdivision 8 of section 721 of the Real Property Actions and Proceedings Law so that the landlord, the limited partnership, could institute and maintain proceedings as provided in subdivision 1 of section 721. The court was careful to note that by so doing the chairman subjected himself to the same possible consequences as a general partner. The court also pointed out that Glatstian had violated section 98 of the Partnership Law and also a specific provision of the partnership agreement.

In *E. H. A. Successor Corp.* v. *Vogel* (21 A D 2d 176) where the defendant had appealed from an order which granted a stay and appointed a receiver, we pointed out that indispensable and even proper parties, plaintiff or defendant, should be added in the Supreme Court action and that the pleading should be amended to clarify the situation, with leave to the defendant to interpose any possible defenses or counterclaim.

*Klebanow* v. *New York Produce Exch.* (*supra*) went somewhat further. The question as stated by the court was " whether limited partners of a New York partnership in dissolution can sue on its behalf for damages claimed to have been inflicted on it by conduct proscribed by the federal antitrust law, when the partnership and the liquidating partner allegedly have rendered themselves unable to sue and their delegate is claimed to be unwilling to do so because of affiliations with the defendants '' (p. 295). The court, after an extended discussion, reversed the dismissal for want of capacity with instructions to file an amended complaint in default of which a new order of dismissal could be entered. MOORE, Circuit Judge, concurred only in the result. The court's discussion of the relationship between limited partners and the partnership concluded that the New York courts did not consider section 115 of the Partnership Law, " a clear mandate against limited partners' capacity to bring an action like this '' (p. 298). It noted that who might bring an action under section 4 of the Clayton Act (U. S. Code, tit. 15, § 15) on behalf of a partnership was a question within Federal competence and observed " in the main, a limited partner is more like a shareholder '' and that it makes " considerably greater sense to clothe the instant appellants with whatever descriptive phrase is necessary to enable them to sue on behalf of the partnership than to entertain derivative suits by persons owning a few shares in giant corporations '' (p. 297). The court seems to have gone on the basis of policy

considerations and to have overlooked the fact that the New York Legislature has not so extended the law as to limited partnerships. Possibly its attention was not called to a long line of cases which do not equate or even substantially analogize a limited partner to a shareholder. In *Mannaberg* v. *Herbst* (45 N. Y. S. 2d 197, affd. without opn. 267 App. Div. 818, affd. 293 N. Y. 657) an action by one of four general partners against a third person for damages allegedly sustained by reason of the wrongdoing of such third person and one or more of the partners, it was pointed out "that where one partner and a third person join in a fraudulent disposition of partnership property the wrong is done not to the firm but to each partner separately and that each not only may but must sue alone for such damage as he has sustained" (p. 199). It would seem that a limited partner should have no greater right in seeking redress than a general partner, i.e., by individual action. (See, also, *Sweet* v. *Morrison,* 103 N. Y. 235, 240.)

While the appellants seek to have respondents separately state and number the causes of action and to strike certain causes as time-barred, in light of our conclusion that the class action may not be maintained we conclude the better procedure is to direct service of an amended complaint.

Accordingly, the order appealed from should be reversed on the law and the motion to dismiss the complaint granted, with leave to replead, and with costs and disbursements to appellants.

RABIN, J. (dissenting in part). Broadly stated, the question raised by this partial dissent is whether the courts will give limited partners the right to compel the general partners of a limited partnership to account to the partnership for wrongful acts resulting in detriment and loss to the partnership. Stated in a more limited way, the question is whether limited partners may maintain a derivative action on behalf of the partnership against the general partners for wrongdoing. The majority have held that they may not. I dissent because I believe that unless such right be given there will be a failure of an adequate remedy for the wrongs alleged to have been done. Of course, in discussing this issue I must, in the light of the manner in which the question was presented at Special Term, accept the allegations as pleaded.

Essentially, plaintiffs seek redress for two distinct wrongs. They bring a class action to recover for frauds perpetrated to induce them to buy limited partnership shares, and they also sue to hold the general partners and others to account to the partnership entity, as such, for subsequent wrongdoing — wrongs resulting in injury to the partnership.

I concur in that part of the decision of the majority which holds that limited partners may not bring a class action to recover for frauds committed in inducing them to purchase shares in the partnership (*Brenner* v. *Title Guar. & Trust Co.,* 276 N. Y. 230). However, I do think that limited partners should be permitted to sue derivatively for the benefit of the partnership where general partners have, through wrongdoing, injured the partnership.

It is well to describe the nature of the business association with which we are here concerned. Briefly stated, a syndication of certain real property was cast in the form of a limited partnership. A prospectus was issued, though not filed*, offering one hundred limited partnership shares, each in the amount of $12,000. It provided that the prospective limited partners were to receive a 12% return per annum, noncumulative, payable out of the net return. The plaintiffs are some of those who were induced to join the limited partnership.

Plaintiffs, charging wrongdoing on the part of the general partners, premise their quest for relief on their right to assert a claim against these defendants on behalf of the limited partnership. Defendants contend that such an action, derivative in nature, is not available to limited partners.

An important preliminary observation should here be made. Syndications of real property cast in the form of limited partnerships are of recent advent (Silverman, Real Estate Syndicates, 18 N. Y. U. Inst. on Fed. Taxation 1). Until quite recently, neither the courts nor the Legislature have been petitioned by limited partners for redress for wrongs done to the partnership by the general partners. But those courts that have recently passed upon the issue have sustained the actions brought by limited partners on behalf of the partnership. (See, e.g., *Executive Hotel Assoc.* v. *Elm Hotel Corp.,* 41 Misc 2d 354, affd. 43 Misc 2d 153.) The fact that there is no high appellate pronouncement in New York State indicating that such action may be brought does not, of course, mean that it may not be brought. I can find no decision which expressly prohibits such action. Nor do I think that *Mannaberg* v. *Herbst* (45 N. Y. S. 2d 197, affd. 267 App. Div. 818, affd. 293 N. Y. 657) cited by the majority does so. That case, brought for wrongdoing, merely held that one partner may bring an action against another partner and a third person without joining the remaining partners. True, there was dictum at Special Term to the effect that a partner may not maintain a derivative action. How-

---

* Such filing, even as to intrastate offerings, is required by section 352-e of the General Business Law.

ever, it should be noted that no such action was there sought to be maintained. And, more important, there involved was not a limited partnership but rather a four-man general partnership. Of more than passing interest is the fact that the courts that have recently rendered decisions sustaining the right of a limited partner to bring a derivative action were not troubled by *Mannaberg* v. *Herbst* (*supra*). And, consequently, it was not discussed, nor even cited. I would hardly call that case an authority prohibiting a derivative action in a situation such as is here involved.

However, the majority holds that the only remedy available to a limited partner who claims wrongdoing on the part of the general partners is to institute suit on his own behalf for the damage that he individually has sustained. I think that such remedy is wholly inadequate. As indicated, the limited partners here involved are entitled only to a noncumulative 12% return out of profits. Were a limited partner to institute suit in his own name for the damage incurred by him as the result of the general partners' wrongdoing, his action would have to be dismissed unless he could prove that proper restitution would result in a profit to the partnership, permitting him to receive all or part of his 12% return. Such result would mean that general partners may loot the partnership with impunity, the limited partner having no right to compel restitution unless he can show that such restitution would result in a distribution to him.

Quite above the limited partner's expectation of a current return is his greater interest in the partnership maintaining a firm and sound fiscal position. If funds wrongfully withheld or taken from the partnership were returned, the limited partnership would be in a far better position to operate profitably in the years following. Indeed, the return of such funds might be essential for its survival. That interest could not be protected by relegating the limited partner to a suit solely on his own behalf for his own specific damage. Thus, I conclude that unless we allow a derivative suit the limited partner has no adequate remedy. The law will, and it should, provide an adequate remedy for every wrong. The necessity for such a remedy has been here demonstrated. As indicated, I know of no decision that prevents the courts from affording the only remedy adequate under the circumstances, i.e., a derivative suit.

That the law abhors sterility in circumstances such as are here present is evident from an examination of the origin of derivative actions in the law of corporations. In one of the earliest cases sustaining a derivative action it was stated: " If a case should arise of injury to a corporation by some of its members,

for which no *adequate* remedy remained, except that of a suit by individual corporators in their private characters, and asking in such character the protection of those rights to which in their corporate character they were entitled, I cannot but think that \* \* \* the claims of justice would be found superior to any difficulties arising out of technical rules ". (*Foss* v. *Harbottle*, 2 Hare 461, 492, 67 Eng. Reprint 189, 203; emphasis added.)

One commentator has stated that the " origin of the derivative suit, as indeed of any non-statutory type of action, lies in judicial recognition of a new wrong \* \* \* for which pre-existing legal procedures proved more or less inadequate." (Prunty, The Shareholders' Derivative Suit, 32 N. Y. U. L. Rev. 980, 992.) And, it should be noted that although corporations are creatures of statute, the courts in allowing derivative suits were not prevented by a lack of a statutory grant from supplying adequate relief. Acting on their historic inherent powers and adopting a progressive approach, the courts fashioned such relief. The courts in this State are beginning to look forward and indicate approval of a derivative action by a limited partner. Witness the following language of the Court of Appeals in *Ruzicka* v. *Rager* (305 N. Y. 191, 197–198) wherein it states: " It is to be remembered that we are here concerned with a *limited* partnership. There is good reason for regarding such a partnership as a distinct entity for the purposes of pleading. Limited partnerships were unknown to the common law and, like corporations, are ' creature[s] of statute ' (*Lanier* v. *Bowdoin*, 282 N. Y. 32, 38). Statutes permitting limited partnerships are intended to encourage investment in business enterprise *by affording to a limited partner a position analogous to that of a corporate shareholder*." (Last emphasis supplied.) Immediately following, the Court of Appeals characterized a limited partner as one having " quasi-shareholder status " and refers to the limited partnership as having " quasi-corporate aspects." The forward-looking statement of the Court of Appeals, above quoted, has been fully implemented in a particularly well-reasoned opinion by Judge FRIENDLY (*Klebanow* v. *New York Produce Exch.*, 344 F. 2d 294) construing the law of the State of New York and concluding that derivative actions may be maintained by limited partners. Of course, we are not bound by that decision; but we cannot, nor should we try to escape from its inherent logic.

Further, it may well be that this action may be supported on heretofore developed principles in the law of trusts. It was long ago stated by Chancellor KENT, with respect to corporations, that: " The persons who, from time to time, exercise the

corporate powers, may, in their character of trustees, be accountable * * * for a fraudulent breach of trust" (*Attorney-General* v. *Utica Ins. Co.*, 2 Johns Ch. 371, 389).

But the majority asserts that the statutes do not permit the courts to so act. It states that section 115 of the Partnership Law precludes the maintenance of a derivative action. That provision was adopted by the Legislature in 1922 and it may not be urged that either the framers of the Uniform Limited Partnership Act or the Legislature "focused on the problem here at issue." (*Klebanow* v. *New York Produce Exch.*, 344 F. 2d 294, 298.) But more to the point is the fact that the language clearly states no more than that a contributor, unless he is a general partner, is not a proper party to proceedings by or against a partnership. The action here sought to be maintained is not one by or against the partnership. Rather it is one on behalf of the partnership with internal implications of wrongdoing or disability on the part of the general partners — certainly not contemplated by section 115.

Judge FRIENDLY, in the *Klebanow* decision, sets forth the purpose of section 115, pointing out that it could hardly be read as going so far as to prohibit derivative suits. Perhaps it would be best to quote his language (p. 298) : " General partners need not join limited partners in an action by the partnership; ordinarily limited partners may not sue since this will interfere with the management by the general partners, Lieberman v. Atlantic Mutual Ins. Co., 62 Wash. 2d 922, 385 P. 2d 53 (1963) ; a suitor against the partnership need not join a limited partner; indeed, he may not do so if the partnership be solvent. See Fuhrman v. Von Pustau, 126 App. Div. 629, 111 N. Y. S. 34 (1908). The words say all this and say it well. But they do not have to be read as saying that a limited partner cannot bring an action on behalf of the partnership when the general partners have disabled themselves or wrongfully refused; and, although they could be so read, we see no sufficient reason for doing so when in quite similar situations the *cestui que trust* or the preferred stockholder is allowed to do exactly that. The predecessor New York statute would hardly be read as going so far; we see no basis for thinking that, in its effort to achieve uniformity with other states, the legislature thought it would be altering New York law in this respect." That reasoning is very persuasive and I adopt it wholeheartedly.

The Court of Appeals in the *Ruzicka* case (*supra*) said that limited partnerships were created " to encourage investment in business enterprise ". Investment in a business enterprise is not fully encouraged unless there be given to the investor an

adequate remedy to enable him to protect that investment from wrongful acts which weaken the financial structure that supports it.

Accordingly, we should hold that the limited partners have a right to sue derivatively in the name of the partnership for and on behalf of the partnership to redress the wrongs committed against the partnership.

BREITEL, J. P., and VALENTE, J., concur with STEVENS, J.; RABIN, J., dissents in part, in opinion in which EAGER, J., concurs.

Order entered on July 8, 1965 reversed, on the law, with $30 costs and disbursements to appellants, and the motion to dismiss the complaint granted, with $10 costs, with leave to replead.