JAMES J. STRAIN, Individually and as a Limited Partner in Seven Hills Associates, Appellant-Respondent, v SEVEN HILLS ASSOCIATES, a Limited Partnership, et al., Respondents-Appellants.

First Department, June 24, 1980

## APPEARANCES OF COUNSEL

*Arthur J. Levy* for appellant-respondent.

*Ira Lee Sorkin* of counsel *(Neal M. Goldman* with him on the brief; *Squadron, Ellenoff, Plesent & Lehrer,* attorneys), for respondents-appellants.

## OPINION OF THE COURT

LUPIANO, J.

Seven Hills Associates is a limited partnership, formed on August 1, 1965, under the laws of the State of Ohio for the purpose of owning and operating a two-story commercial office building located in Worcester, Massachusetts. Plaintiff, a limited partner in Seven Hills since 1966, commenced this action by service of a summons and verified complaint which asserts two causes of action—the first being a derivative action brought by plaintiff limited partner in place of the limited partnership against the sole general partner, defendant Raphael D. Silver, for alleged breach of fiduciary duty in his management of the affairs of the partnership. Relief in the form of an accounting and monetary damages, both compensatory and punitive, is sought. It is asserted that the general partner managed the partnership business through Midwestern Land Development Corp., an Ohio corporation, wholly owned by himself and his wife. In 1967, the general partner, Silver, moved from Ohio to New York, where he thereafter continuously resided. Similarly, plaintiff moved from Ohio to New York shortly after becoming a limited partner and has since resided here. Offices for Midwestern Land Development Corp. and the limited partnership were maintained in New York and Ohio. It is asserted that defendant Silver managed the operations of Seven Hills from the New York office and that his actions as general partner, which are the subject of this lawsuit, occurred in New York.

The partnership's asset, the two-story commercial building

in Massachusetts, obtained its heating and other utility services from equipment located in an adjacent six-story building owned by New Salem, Inc., a Massachusetts corporation, in which (it is alleged) defendant Silver had a controlling interest. The gravamen of the complaint is that Silver operated the two adjoining buildings as if commonly owned, utilizing New Salem, Inc. as the vehicle for payment of operating expenses for both the corporation and the limited partnership. It is asserted that Silver, in his management of the partnership property as general partner, was guided, not by what would be in the best interests of the partnership, but by the over-all financial status of both buildings viewed as a single unit. The unfolding dynamic of the business condition of the limited partnership as described in the complaint was a shift from a positive cash flow to a poor condition incurred by the unfavorable income position of New Salem Inc.'s six-story building, i.e., the general partner in essence sacrificed the partnership's interest to the corporate interest of New Salem culminating in the ceasing of mortgage payments on the two-story building (the limited partnership asset) in November, 1976. The partnership's building was foreclosed upon by Bankers Trust Company of New York City and purchased by that bank at the foreclosure sale. Seven Hills Associates ceased operations, and the investments of the limited partners were lost.

Plaintiff's motion for leave to serve a proposed amended verified complaint and defendant's subsequent motion to dismiss the first cause of action (the derivative action) for failure to state a cause of action pursuant to CPLR 3211 (subd [a], par 7), to dismiss the action on the ground that New York is an inconvenient forum; or, in the alternative, to strike from the amended verified complaint scandalous and prejudicial matter, resulted in a determination at Special Term granting plaintiff leave to serve the amended verified complaint, dismissing the first cause of action of the complaint on the ground that a derivative claim on behalf of the limited partnership is not maintainable by a limited partner under Ohio law, allowing maintenance of the action in New York in finding that New York is a convenient forum, and denying that aspect of defendants' motion to strike certain matter from the complaint as prejudicial or scandalous.

■ Addressing the *forum non conveniens* issue, it is clear on this record that Special Term properly determined to retain this action in New York. Both plaintiff and the defendant

general partner reside here, and the alleged wrongful supervising acts by the general partner were taken by him in New York. Key documents are presently located in New York where offices are maintained by the limited partnership and its general partner.

The critical issue is whether plaintiff, as a limited partner, may sue derivatively on behalf of the limited partnership. As the limited partnership was created under Ohio law, the rights and liabilities of the parties are governed by that law. Both New York and Ohio have adopted the Uniform Limited Partnership Act (New York—Partnership Law, §§ 90-119, L 1922, ch 640, eff April 13, 1922; Ohio—R. C., §§ 1781.01-1781.27, L 1957, p 447, eff Sept. 14, 1957). The parties in their briefs represent to this court that they have examined Ohio law and have found no case law or statutory law specifically permitting or prohibiting the maintenance of a derivative action by a limited partner.

"Limited or special partnerships were unknown at common law, and are in this country of purely statutory origin * * * The development of statutory law pertaining to limited partnerships began in this country in 1822, with the New York legislature being the first to recognize the use of this form of organization by the business and commercial world" (43 NY Jur, Partnership, § 267).

This preceded by only 10 years New York's landmark decision permitting the corporate stockholder's derivative suit *(Robinson v Smith,* 3 Paige Ch 222 [1832]).[1] The commercial States

---

1. "Although these debuts were temporally related, it was not until the 1960's that their substantive nexus was judicially recognized in several cases authorizing a limited partner to sue derivatively on behalf of his firm. *[Riviera Congress Assoc. v Yassky,* NYLJ, May 21, 1965, p 15, col 7 (Sup. Ct.); *Caplow v Merians,* NYLJ, May 14, 1965, p 16, col 3 (Sup. Ct.); *Graham & Co. v Westchester Plaza Assoc.,* NYLJ, April 19, 1965, p 14, col 8 (Sup. Ct.); *Executive Hotel Assoc. v Elm Hotel Corp.,* 41 Misc 2d 354, 245 NYS2d 929 (Civ. Ct.), affd without opn 43 Misc 2d 153, 250 NYS2d 351 (App. Term 1964); *Cooper Prods. Co. v Twin Bowl Co.,* NYLJ, Aug. 21, 1962, p 8, col 7 (Sup. Ct.)]. In *Klebanow v New York Produce Exch.* (344 F2d 294, revg 232 F Supp 965) the Court of Appeals for the Second Circuit * * * scrutinized the New York law of limited partnership and sustained the plaintiffs' capacity to bring a claim under the federal antitrust laws on behalf of their company. Thus, New York law, originator of both the business form and the judicial remedy, has now become a vehicle for melding the two. Since the New York Partnership Law is but a version of uniform partnership legislation [Uniform Partnership Act, adopted by L 1919, ch 212, codified as NY Partnership Law §§ 1-74; Uniform Limited Partnership Act, adopted by L 1922, ch 640, codified as NY Partnership Law, §§ 90-119), these decisions can be expected to influence the development of the limited partnership concept, the attractiveness of
*(n. contd.)*

during the ensuing thirty years (after 1822) followed New York's example with most of the statutes following the language of the New York statute with little material alteration (see Official Comment to Uniform Limited Partnership Act [U. L. A.] § 1). Underlying the promulgation of the Uniform Partnership Act and the Uniform Limited Partnership Act was the fact, among others, that "[i]n any one state it is often impossible to find an authority on a matter of comparatively frequent occurrence, while not infrequently an exhaustive research of the reports of the decisions of all the states and the federal courts fails to reveal a single authority throwing light on the question" (Commission's Prefatory Note, Uniform Partnership Act [U. L. A.], p 7).

The origin and evolution of the corporate shareholder's derivative suit occurred on the equity side of civil law as distinct from actions at law (see *Robinson v Smith, supra; Hichens v Congreve*, 4 Russ 562, 38 Eng Rep 917 [Ch 1828]). Critical to the viability of the derivative suit as a remedy was the acknowledgment of the trust relationships and resultant possibilities of fiduciary dereliction, i.e., the deeming of corporate directors to be trustees for the shareholders, who were termed *cestui que trusts* holding a joint interest in corporate property.

Attention is now directed to the 1965 landmark determination of the United States Court of Appeals, Second Circuit, in *Klebanow v New York Produce Exch.* (344 F2d 294). At *that time* both Ohio and New York had adopted the Uniform Limited Partnership Act and, in particular, section 26 (Partnership Law, § 115) thereof, entitled "Parties to actions," which provides: "A contributor, unless he is a general partner, is not a proper party to proceedings by or against a partnership, except where the object is to enforce a limited partner's right against or liability to the partnership."[2] The purpose of this section, excluding limited partners from most legal proceedings involving the partnership, is solely to restrain limited partners from interfering with the right of the general partner(s) to carry on the business of the partnership *(Riviera*

---

the form to various interests, and the relative roles of limited and general partners" (65 Columbia L Rev 1463).

2. In 1965, the sole variation between the New York statute (Partnership Law, § 115) and the Ohio statute resided in Ohio's substituting "a limited partner" for "a contributor." Thus, for all practical purposes, the statutes were identical regarding "Parties to actions."

*Congress Assoc. v Yassky,* 18 NY2d 540). In 1953, the New York Court of Appeals acutely noted the quasi-corporate aspects of the limited partnership form of business and the quasi-shareholder status of the limited partner, as follows: "Limited partnerships were unknown to the common law and, like corporations, are 'creature[s] of statute' *(Lanier v. Bowdoin,* 282 N.Y. 32, 38). Statutes permitting limited partnerships are intended to encourage investment in business enterprise by affording to a limited partner a position analogous to that of a corporate shareholder" *(Ruzicka v Rager,* 305 NY 191, 197-198).

The novel issue confronting the Second Circuit in *Klebanow* was whether limited partners of a *New York* limited partnership can sue on its behalf for damages claimed to have been inflicted on it by conduct proscribed by Federal antitrust law when the general partner in the partnership dissolution is unwilling to do so, ostensibly because of affiliation with the defendants. *New York* law was applied as the law of the forum where the limited partnership was formed and has its headquarters. In grappling with this issue, the Second Circuit Court of Appeals noted with approval New York's analogy of the limited partner to a corporate shareholder.[3] Defendants raised as a bar to the derivative suit, section 115 of the New York Partnership Law, urging that said statute prohibited the maintenance of such derivative suit. In scrutinizing this contention, the United States Court of Appeals declared: "[Defendants] do not seriously contend that the framers of the Uniform Limited Partnership Act or the legislature of 1922 had focused on the problem here at issue. In reading the language, we must remember that 'Legislative words are not inert, and derive vitality from the obvious purposes at which they are aimed', [citation]. The purposes of § 115 * * * were reasonably plain. General partners need not join limited partners in an

---

3. "[I]n the main, a limited partner is more like a shareholder, often expecting a share of the profits, subordinated to general creditors, having some control over direction of the enterprise by his veto on the admission of new partners, and able to examine books and 'have on demand true and full information of all things affecting the partnership * * *' See N.Y. Partnership Law §§ 98, 99, 112. That the limited partner is immune to personal liability for partnership debts save for his original investment, is not thought to be an 'owner' of partnership property, and does not manage the business may distinguish him from general partners but strengthens his resemblance to the stockholder; and even as to his preference in dissolution, he resembles the preferred stockholder" *(Klebanow v New York Produce Exch.,* 344 F2d 294, 297).

action by the partnership; ordinarily, limited partners may not sue since this will interfere with the management by the general partners, *Lieberman v. Atlantic Mutual Ins. Co.,* 62 Wash.2d 922, 385 P.2d 53 (1963); a suitor against the partnership need not join a limited partner; indeed, he may not do so if the partnership is solvent. See *Fuhrman v. Von Pustau,* 126 App. Div. 629, 111 N.Y.S. 34 (1908). The words say all this and say it well. But they do not have to be read as saying that a limited partner cannot bring an action on behalf of the partnership when the general partners have disabled themselves or wrongfully refused; and, although they could be so read, we see no sufficient reason for doing so when in quite similar situations the *cestui que trust* or the preferred stockholder is allowed to do exactly that" *(Klebanow v New York Produce Exch., supra,* p 298). Accordingly, it was concluded that the New York courts did not view section 115 as prohibiting a limited partner from maintaining a derivative action on behalf of the partnership and that, assuming New York law to be unclear on this issue, Federal policy impelled resolving the doubt in a manner to permit assertion of a Federal claim.[4]

Subsequently, in December, 1966, New York's Court of Appeals gave its imprimatur to the Federal appellate court's view of New York law by judicially recognizing a derivative action as a remedy which could be availed of by a limited partner under appropriate circumstances *(Riviera Congress Assoc. v Yassky,* 18 NY2d 540, *supra).* The Court of Appeals stated that section 115 of the Partnership Law was not a bar as its purpose was solely to restrain limited partners from interfering with the right of the general partners to carry on

---

4. Of historical note, this court in a 3-to-2 determination disagreed with the *Klebanow* conclusion on the limited basis that the issue of whether a derivative claim may be maintained by a limited partner(s) was solely for the Legislature, because the limited partnership is solely a creature of statute *(Millard v Newmark & Co.,* 24 AD2d 333). The penetrating dissent of RABIN, J. was essentially based on the fact that "the 'origin of the derivative suit, as indeed of any non-statutory type of action, lies in judicial recognition of a new wrong * * * for which pre-existing legal procedures proved more or less inadequate.' (Prunty, The Shareholders' Derivative Suit, 32 N.Y.U.L. Rev. 980, 992.) And, it should be noted that although corporations are creatures of statute, the courts in allowing derivative suits were not prevented by a lack of a statutory grant from supplying adequate relief. Acting on their historic inherent powers and adopting a progressive approach, the courts fashioned such relief. The courts in this State are beginning to look forward and indicate approval of a derivative action by a limited partner" (citing *Ruzicka v Rager,* 305 NY 191, 197-198) *(Millard v Newmark & Co.,* 24 AD2d 333, 343). The prophetic utterance of the dissent was vindicated shortly thereafter by the New York Court of Appeals pronouncement in *Riviera Congress Assoc. v Yassky,* 18 NY2d 540 [1966]).

the business, whereas the basis of the lawsuit in *Riviera Congress Assoc.* was the wrongful refusal of the general partners to enforce a partnership claim. The evolutionary aspect of common-law principles of equity was alluded to, the court noting: "There can be no question that a managing or general partner of a limited partnership is bound in a fiduciary relationship with the limited partners (see, e.g., *Meinhard v. Salmon,* 249 N.Y. 458) and the latter are, therefore, *cestuis que trustent.* (See *Lichtyger v. Franchard Corp.,* 18 NY2d 528 \* \* \*) *It is fundamental to the law of trusts that cestuis have the right, 'upon the general principles of equity' (Robinson v. Smith,* 3 Paige Ch. 222, 232) *and 'independently of [statutory] provisions' (Brinckerhoff v. Bostwick,* 88 N.Y. 52, 59), *to sue for the benefit of the trust* on a cause of action which belongs to the trust if 'the trustees refuse to perform their duty in that respect'. *(Western R.R. Co. v. Nolan,* 48 N.Y. 513, 518; see, e.g., *Bonham v. Coe,* 276 N.Y. 540; *Matter of Straut,* 126 N.Y. 201, 212; *Brooklyn Free Kindergarten Soc. v Elbran Realty Corp.,* 255 App. Div. 852; *Robinson v. Adams,* 81 App. Div. 20, 25.)" (Emphasis supplied.)

In consequence of *Riviera Congress Assoc.* case, the New York Legislature codified this judicial rule that limited partners may bring a derivative action in the right of a limited partnership to procure a judgment in its favor (L 1968, ch 496).[5] The consensus reached by the judicial branch of government in New York was thus subscribed to by the legislative branch.

To reiterate, there is apparently no Ohio case law on this issue, and the Ohio partnership statute and New York partnership statute were in all relevant and vital respects similar at the time of judicial recognition in New York of the remedy of derivative suit by a limited partner and are today similar in all relevant and vital respects, except for the legislative codification in New York of the afore-mentioned judicially

---

5. The amendment (effective June 5, 1968) consisted of the addition of new sections 115-a, 115-b, 115-c and of the following added words to section 115—"and except in cases provided for in section one hundred fifteen a of this Article." The "Note" to this piece of legislation declares: "These are amendments recommended by the Law Revision Commission \* \* \* Their purpose is to codify the rule that limited partners may bring a derivative action in the right of a limited partnership to procure a judgment in its favor *(Riviera Congress Assoc. v Yassky,* 18 NY2d 540), and to provide rules governing the prosecution of such actions, including the right of the limited partnership to security for expenses and the right of general partners to indemnification."

recognized remedy. The presumption is that the common law of a sister State is the same as our own, in the absence of evidence to the contrary, not including those States that have inherited or adopted the civil law, such as Louisiana (International Text Book Co. v Connelly, 206 NY 188, 200-201).

"There is no such presumption as to the statutes of a sister state, for they must be proved under proper allegations before the courts can take cognizance of them" (ibid, p 200).

Thus, in the absence of proof to the contrary, we must assume that the common-law equitable principles underlying the law of Ohio are the same as those underlying the law of New York (see Gaines v Jacobsen, 308 NY 218, 221-222). Accordingly, we conclude that the rule fundamental to the law of trusts that cestuis have the right upon general principles of equity, independently of statutory provision, to sue for the benefit of the trust on a cause of action which belongs to the trust where the trustee has an adverse interest or has conspired to defeat the trust obtains equal force under Ohio law as under New York law.

Clearly, the authority in New York, a key State in the evolution of business law as it embraces, in this case, limited partnerships, obtaining force from well-recognized common-law principles of equity, militates against a strict interpretation of section 1781.26 of the Ohio Uniform Limited Partnership Act (see, e.g., Baltzell-Wolfe Agencies v Car Wash Invs. No. 1, 58 Ohio App 2d 70).

"Equity, in this instance, demands a liberal interpretation of the statute in the absence of a direct prohibition of a derivative cause" (Smith v Bader, 458 F Supp 1184, 1186; emphasis supplied).

The liberal approach adopted by the appellate courts of Ohio in confronting novel issues under Ohio law concerned with limited partnership is exemplified by Baltzell-Wolfe Agencies v Car Wash Invs. No. 1 (supra). The novel issue there confronting the court was whether a general partner of a limited partnership, after his withdrawal as such, is liable to a person who had previously extended credit to such limited partnership and continues to do so after continuation of the general partnership after such withdrawal and the substitution of a new general partner, where such creditor had no actual notice of the withdrawal or change of general partners. Ohio law provides that the general partnership law applies to limited partnerships, except to the extent that it is inconsis-

tent with the limited partnership statute (Ohio R. C., § 1775.05, subd [B]).[6] Thus, Ohio law mandates, relevant to limited partnership, that "[i]n any case not provided for in [this act] * * * the rules of law and equity, including the law merchant shall govern" (Ohio R. C., § 1775.04, which is the same as Uniform Partnership Act [U. L. A.] § 5).

The Court of Appeals, noting that the circumstances giving rise to the novel issue confronting it in *Baltzell-Wolfe Agencies,* did not fall precisely within the provisions of the (uniform) partnership and limited partnership statutes, relied upon the directive that the rules of law and equity shall govern (Ohio R. C., § 1775.04) and concluded that such directive warranted application of the principles embraced in section 1775.34 of the Ohio Revised Code of the partnership law, despite the fact that the circumstances of the case were not contemplated by said statutory provision *(Baltzell-Wolfe Agencies v Car Wash Invs No. 1,* 58 Ohio App 2d 70, 73). The court concluded that where credit was extended to the limited partnership after a change of general partners by a creditor having no notice or knowledge of such change of general partners, the withdrawing general partners were liable to the creditor for such credit extended, despite the substitution of the new general partner.

In light of the aforesaid, reason and due regard for the historical evolution of the law of limited partnership mandate the conclusion that in the absence of a showing that Ohio law prohibits maintenance of a derivative suit by a limited partner, plaintiff is entitled to maintain his first cause of action (which asserts a derivative claim on behalf of the partnership).[7]

Defendant general partner argues that the claim asserted in the first cause of action of the amended pleading must be

---

6. Same as section 6 of the Uniform Partnership Act U. L. A.) which provides in pertinent part: "this act shall apply to limited partnerships except insofar as the statutes relating to such partnerships are inconsistent herewith."

7. The mere fact that the legislative branch of the Ohio State government has not enacted legislation specifically permitting maintenance of a derivative claim by a limited partner does not warrant a different conclusion, as the remedy is subject to recognition by the judicial branch of that government in the absence of specific legislative prohibition. The analogy between the development of legal recognition of this remedy in New York—a key State historically in the development of business law, and the continuing development of this aspect of the law in Ohio, having due regard for the import of settled principles of equity operative in both jurisdictions—clearly supports the result arrived at herein.

dismissed because it does not allege a derivative claim, although couched in terms of a derivative claim, and is, in essence, an assertion of a claim based upon a personal right belonging to the plaintiff limited partner.[8] In determining whether a cause of action is derivative in nature regarding limited partnership law, the case law relevant to corporation law may be looked to for guidance. This follows from the Court of Appeals' approach equating the status of corporate stockholders vis-à-vis corporate directors to that existing between limited partners and general partners *(Lichtyger v Franchard Corp.,* 18 NY2d 528; *Riviera Congress Assoc. v Yassky,* 18 NY2d 540, *supra; Ruzicka v Rager,* 305 NY 191, *supra).*[9]

"An action may be said to be representative when it is based upon a primary or personal right belonging to the plaintiff stockholder and those of his class; it is derivative when the action is based upon a primary right of the corporation but is asserted on its behalf by a stockholder because of the corporation's failure, deliberate or otherwise, to act upon the primary right * * * *The nature of the wrong alleged is what controls;* the pleader's assertion of an intent to sue as representative of the stockholders rather than in the right of the corporation is immaterial where the wrong claimed is a wrong to the corporation, not a wrong to the stockholders personally or individually" (11 NY Jur, Corporations, § 365; emphasis supplied). "As a general rule, waste, mismanagement and interference with the corporation's business are wrongs to the corporation, the remedy for which is a stockholder's derivative action, and not a cause of action in favor of the individual stockholders even though they may be indirectly damaged because the value of their stock is depreciated. Thus * * * in case of a wrongful misappropriation, diversion,

---

**8.** It is assumed that the gravamen for dismissal would lie in the postulate that a personal claim does not accrue to plaintiff from the nature of the wrong alleged or, alternatively, that although a personal, not a derivative claim properly lies, the first cause is simply repetitive of the other causes alleged.

**9.** In *Lichtyger v Franchard Corp.* (18 NY2d 528, 536) the Court of Appeals declared: "There is no basis or warrant for distinguishing the fiduciary relationship of corporate director and shareholder from that of general partner and limited partner. The principle is the same—those in control of a business must deal fairly with the interests of the other investors and this is so regardless of whether the business is in corporate or partnership form. (See, e.g., *Leibert v. Clapp,* 13 NY2d 313 * * *; *Meinhard v. Salmon,* 249 N.Y. 458.) As Chief Judge CARDOZO stated so eloquently in the *Meinhard* case (249 N.Y. 450, 464, *supra),* 'Not honesty alone, but the punctilio of an honor the most sensitive, is * * * the standard of behavior'."

or sale of corporate assets by officers, directors, or majority stockholders of a corporation, stockholders may bring a derivative action on behalf of the corporation against the wrongdoers" (11 NY Jur, Corporations, § 379).

By logical extension it appears that a limited partner's power to vindicate a wrong done to the limited partnership and to enforce redress for the loss or diminution in value of his interest is no greater than that of a stockholder of a corporation. As a general proposition, where a corporation suffers loss because of the acts of officers, directors, or others which diminish or render valueless the shares of stock of a stockholder, the stockholder does not have a direct cause of action for such damages, but has a derivative cause of action on behalf of the corporation to recover the loss for the benefit of the corporation (*Greenfield v Denner,* 6 NY2d 867, revg 6 AD2d 263 on dissenting opn in App Div; *Niles v New York Cent. & Hudson Riv. R. R. Co.,* 176 NY 119, 123-124; *All States Warehousing v Mammoth Stor. Warehouses,* 7 AD2d 714).

The nature of the wrong alleged in the first cause of action of the amended verified complaint is clearly based on alleged wrongs to the partnership which indirectly have damaged plaintiff limited partner by rendering his contribution or interest valueless. Accordingly, it is concluded that the claim asserted in the first cause of action is properly brought as a derivative claim on behalf of the partnership and not as one personal to plaintiff.

It is noted, in conclusion, that defendants do not cross-appeal from Special Term's denial of that branch of their motions seeking to strike scandalous and prejudicial matter.

Accordingly, the order of the Supreme Court, New York County (SCHWARTZ, J.), entered July 13, 1979, which granted defendants' motion to the extent of dismissing the first cause of action of the amended verified complaint for failure to state a cause of action (CPLR 3211, subd [a], par 7) and otherwise denied defendants' motion to dismiss the action on the ground of *forum non conveniens* and to strike certain allegations of the amended verified complaint as prejudicial or scandalous and which granted plaintiff's motion for leave to serve the amended verified complaint, modified, on the law, to the extent of reversing the dismissal of the plaintiff's first cause of action and denying defendants' motion to dismiss the first cause of action of the amended verified complaint, and, as so modified, affirmed, without costs and without disbursements.

KUPFERMAN, J. P., FEIN, BLOOM and CARRO, JJ., concur.

Order, Supreme Court, New York County, entered on July 13, 1979, modified, on the law, to the extent of reversing the dismissal of the plaintiff's first cause of action and denying defendants' motion to dismiss the first cause of action of the amended verified complaint, and, as so modified, affirmed, without costs and without disbursements.