OPINION OF THE COURT
Carolyn E. Demarest, J.
Defendant Ferret Family Limited Partnership, L.E moves to dismiss this action pursuant to Partnership Law § 115-a (4) and CPLR 3212. Plaintiffs cross-move pursuant to CPLR 6311, 6312 and 6313 to enjoin defendants from implementing resolutions passed at a partnership meeting and for the appointment of an attorney for the partnership and a receiver for the properties and assets of the partnership. Plaintiffs also seek reimbursement of attorneys’ fees and costs.
Background
Defendant Ferret Family Limited Partnership, L.E (Partnership) was formed in 1997 to manage and dispose of various real *1025 estate properties.[1] On December 1, 1997, Robert Perret, Jr. and Phyllis Perret, husband and wife, entered into an “Amended and Restated Partnership Agreement” (Agreement) as general partners, along with the limited partners.[2] On June 11, 2004, Robert died. Plaintiffs claim that article 4.9 of the Agreement authorized Denise Perret Wallace, daughter of Robert and stepdaughter of Phyllis, to become a successor general partner upon Robert’s death and that, since Robert’s death, Phyllis has maintained sole control over the management of the Partnership by refusing to allow Denise to participate in the management of the Partnership, denying Denise access to the books and records, and breaching her fiduciary duty to the Partnership. Two of the three parcels of real estate owned by the Partnership have been sold for approximately $5 million. The parties have been attempting to sell the third property. The complaint alleges causes of action for breach of contract, breach of fiduciary duty, conversion, preliminary injunction and derivative claims.
On October 8, 2009, this court issued a decision and order finding that, although “not so captioned, plaintiffs have brought this action derivatively on behalf of the [Partnership]” and “Plaintiff [Denise] succeeded to her father Robert’s status as co-general partner with Phyllis, pursuant to Article 4.9 of the Partnership Agreement, upon Robert’s death on June 11, 2004.” In light of the conflict between Denise and Phyllis, this court directed Denise, “in her capacity as general partner, to invoke the provisions of [Agreement] § 4.1 in order to provide legal counsel on behalf of the Partnership.”[3]
*1026 On November 19, 2009, Denise’s counsel notified Phyllis’ counsel that Denise wished to hire Marc E. Elliott or Donald D. Cassel as counsel for the Partnership. On or about November 30, 2009, Phyllis noticed a special meeting of the Partnership by telephone for December 10, 2009 (defendant’s meeting) with an agenda that included the ratification of all prior actions taken by Phyllis and Robert, the engagement of cocounsel for the Partnership, reimbursement of litigation - costs of limited partners, reimbursement of general partners of management expenses, the dismissal of this action, and “such other business as the Partners shall deem necessary and appropriate.” Apparently seeking to preempt the meeting scheduled by Phyllis, on December 4, 2009, Denise’s counsel noticed a special meeting for December 9, 2009 (plaintiffs meeting), indicating that the purpose was to appoint counsel for the Partnership pursuant to this court’s October 8, 2009 order.
On December 9, 2009, the only individuals attending the plaintiffs meeting were Denise, Steven Wallace, Zachary Wallace[4] by proxy, collectively referred to as the “Wallaces,” Phyllis, and their respective counsel. Plaintiffs voted for the appointment of Marc Elliott as counsel for the Partnership, while Phyllis voted against the resolution.[5] After the plaintiffs meeting, Denise brought an emergency order to show cause to restrain Phyllis from convening the defendant’s meeting scheduled for the following day. Following oral arguments, at which all parties were represented, this court declined to sign the order to show cause.
*1027 On December 10, 2009, the defendant’s meeting was held by telephone conference call with 100% of the Partnership in attendance, either personally or by proxy. Plaintiffs’ counsel requested an adjournment of the meeting, claiming that new counsel for the Partnership had been appointed at the plaintiffs meeting the previous day and he was unable to attend the meeting. A vote was held and, other than the Wallaces, the limited partners unanimously voted to continue the meeting. At the defendant’s meeting, the limited partners passed a number of resolutions, including the ratification of prior actions and business decisions by Phyllis and Robert as general partners, the engagement of the law firm Smith, Gambrell & Russell, LLP as counsel for the Partnership in this action and the waiver of any conflict with that firm’s prior representation of Michael Ferret, the reimbursement of money expended by the limited partners during the litigation of this action, with the exception of the costs of Denise and Steven, that Phyllis and Denise be reimbursed for their reasonable expenses incurred in the sale of the Partnership’s property, that Denise and Steven withdraw this action as brought on behalf of the Partnership, and that the Partnership disavow any retention of counsel by Denise and Steven on behalf of the Partnership. With the exception of the Wallaces, who uniformly voted against the resolutions, the limited partners unanimously voted to pass these resolutions. During the defendant’s meeting, plaintiffs’ counsel attempted to extend the discussion with respect to a number of issues, by directly questioning Phyllis regarding her actions as general partner, and Joseph Bainton regarding his prospective representation of the Partnership. On a number of occasions, the discussions were limited by defendants’ counsel so votes could be taken.
Discussion
As a threshold matter, defendants’ contention that Denise Wallace is not a general partner of the Partnership is rejected. Although this court held in its October 8, 2009 decision that Denise succeeded Robert as a general partner, defendants argue that Denise is not a general partner because article 4.9 of the Agreement, which provides that Denise would succeed Robert as general partner, “was not executed by Robert in the presence of any attesting witnesses nor was their [sic] an attestation clause signed by any witnesses stating that Robert had executed the Partnership Agreement with the formalities of a will” in *1028 violation of section 3-2.1 of the Estates, Powers and Trusts Law. Defendants further argue that since Robert’s last will and testament does not provide for the transfer of the general partnership interest to Denise, it passes to Phyllis under the fourth article of the will in which a trust was created for the sole benefit of Phyllis.
Defendants’ argument that the Agreement does not meet the formalities of a will is unavailing. “A partnership agreement which provides that, upon the death of one partner, his interest shall pass to the surviving partner or partners, resting as it does in contract, is unquestionably valid and may not be defeated by labeling it a testamentary disposition” (Matter of Hillowitz, 22 NY2d 107, 109 [1968]; see Heller v Heller, 216 AD2d 355 [2d Dept 1995]; Matter of Gross, 35 AD2d 830 [2d Dept 1970], affd 29 NY2d 739 [1971]). Partnership Law § 98 (1) (g) and § 121-801 (d) expressly allow a general partner to continue the business upon the death of a general partner where the right is given in the certificate. Article 6.1 (c) of the Agreement unambiguously provides that the death of a general partner would result in the dissolution of the Partnership “[e]xcept as provided in Section 4.9.” Further, article 1.3 of the Agreement, which addresses the objectives of the Partnership, specifically notes that “the objects for which the Partnership is designed may be particularly important after one or more of the original Partners have died.” Accordingly, based on law and the clear language of the Agreement, Robert’s role as general partner passed to Denise at his death.
To the extent that Phyllis argues that Denise “refused to become a successor general partner” for Robert, this argument is contradicted by her own affidavit. Phyllis’ affidavit, originally submitted in support of an earlier motion in this action, indicates that Denise requested access to the books and records, Phyllis consulted with Denise through many conversations regarding the potential sale of the Partnership’s properties, Denise opposed the sale of the properties, and, when a deadlock occurred between the two general partners, Phyllis requested a vote by the limited partners as is required when there is a deadlock between general partners. Further, at the defendant’s meeting on December 10, 2009, the defendants passed a resolution identifying Phyllis and Denise “as General Partners of the Partnership.”
In their cross motion, plaintiffs move for the appointment of Marc Elliott as attorney for the Partnership. Plaintiffs argue *1029 that, at the plaintiffs meeting, the resolution to retain Marc Elliot as attorney for the Partnership passed, as plaintiffs have “at least a 24.5% interest in the Partnership” while Phyllis, who was the only limited partner to oppose the plaintiffs, had “less than a 4% interest” in the Partnership. The Agreement does not set forth any provisions relating to the requirements for conducting a special meeting or vote with respect to the operation of the Partnership (see Partnership Law § 121-302 [b]). The only provision in the Agreement that references a vote by the limited partners is article 4.1 which states that, “[i]n the event of any deadlock between the General Partners, such deadlock shall be broken by vote of a majority in interest of the Limited Partners.” As there are no quorum requirements or other voting provisions in the Agreement, this unambiguous article requires a majority of the entire Partnership to break a deadlock between the general partners and not just a majority of the interest represented at a particular meeting. It is clear that Denise and Phyllis were deadlocked and Denise was directed, by this court, to invoke the voting provision of article 4.1 to provide legal counsel on behalf of the Partnership. Although plaintiffs attempted to pass their own resolution for the retention of counsel by noticing a meeting the day before the previously noticed defendant’s meeting, a majority in interest of the limited partners did not participate in plaintiffs meeting and did not pass such resolution, as the Wallaces do not maintain a majority interest in the Partnership. Accordingly, the votes taken at the plaintiffs meeting are a nullity.[6] As all of the limited partners appeared either in person, or by proxy, at the defendant’s meeting, and each of the resolutions was passed by a majority in interest of the Partnership, the resolutions passed at the defendant’s meeting were passed in accordance with the deadlock voting procedures in article 4.1 of the Agreement. Therefore, plaintiffs’ motion for the appointment of Marc Elliott as attorney for the Partnership is denied.
Defendants move to dismiss this action because it is a derivative action which the majority of the partnership voted to end and, therefore, plaintiffs cannot adequately represent the interest of the partnership. It is further noted that at least 70% of the Partnership voted to ratify the prior “business judgment *1030 decisions” of Phyllis and Robert which are the subject of this action. Plaintiffs argue that the complaint is not solely derivative and includes numerous individual claims, including the lockout of Denise as general partner and breach of fiduciary duty, and that “[t]he wrongs committed were not all to the detriment of the Partnership, they were directly committed against the plaintiffs’ [sic], independent and separate from the Partnership.” On October 8, 2009, with respect to a limited partner’s motion to intervene as a representative of the Partnership and prior to the limited partners’ vote to end the current litigation, this court ruled that, although “not so captioned, plaintiffs have brought this action derivatively on behalf of the [Partnership] against [Phyllis] alleging breaches of her fiduciary duty in managing the Partnership and in allegedly improperly diverting Partnership property to herself.” In light of the defendants’ present motion to dismiss the complaint, the causes of action must be examined to determine whether they are properly pleaded and whether the plaintiffs have standing to maintain a derivative action against Phyllis on behalf of the Partnership.
Although there is limited case law on the pleading requirements of a derivative action pursuant to Partnership Law § 115-a (4) and § 121-1002 (d),[7] “[i]n determining whether a cause of action is derivative in nature regarding limited partnership law, the case law relevant to corporation law may be looked to for guidance” (Strain v Seven Hills Assoc., 75 AD2d 360, 370 [1st Dept 1980]). Where the allegations in a complaint confuse a shareholder’s derivative and individual rights, the complaint will be dismissed, granting leave to replead where appropriate (see Abrams v Donati, 66 NY2d 951, 953 [1985]; Baliotti v Walkes, 134 AD2d 554, 555 [2d Dept 1987]; Barbour v Knecht, 296 AD2d 218, 228 [1st Dept 2002]). The Second Department has noted that, although a complaint joins individual claims with those of the corporation, the complaint need not be dismissed where the plaintiff has “not confused individual and derivative claims within each cause of action” (Baliotti, 134 AD2d at 555; see also Brescia v Silberman, 2009 NY Slip Op 30597[U], *5-6 [Sup Ct, NY County 2009] [holding “(w)here *1031 both derivative and personal claims are properly plead(ed), a hybrid action may in fact be maintained”]). Therefore, if the individual causes of action do not combine both individual and derivative claims, the complaint may be maintained.
In order to determine whether a claim is derivative or individual, “[t]he pertinent inquiry is whether the thrust of the plaintiffs action is to vindicate his personal rights as an individual and not as a stockholder on behalf of the corporation” (Albany-Plattsburgh United Corp. v Bell, 307 AD2d 416, 419 [3d Dept 2003] [internal quotation marks omitted]). Where the “thrust of [the plaintiff’s] objective ... is to vindicate his personal rights as an individual and not as a stockholder on behalf of the corporation . . . the plaintiff lacks standing to maintain [a shareholder’s derivative] action” (DeMarco v Clove Estates, 250 AD2d 724, 724-725 [2d Dept 1998]).
“As a general proposition, where a corporation suffers loss because of the acts of officers, directors, or others which diminish or render valueless the shares of stock of a stockholder, the stockholder does not have a direct cause of action for such damages, but has a derivative cause of action on behalf of the corporation to recover the loss for the benefit of the corporation” (Strain, 75 AD2d at 371).
“Allegations of mismanagement or diversion of assets by officers or directors for their own enrichment, without more, plead a wrong to the corporation only, for which a shareholder may sue derivatively but not individually” (Elenson v Wax, 215 AD2d 429 [2d Dept 1995]; see Abrams, 66 NY2d at 953; Strain, 75 AD2d at 371). “A shareholder, even in a closely-held corporation, may not recover in his or her individual capacity for the corporation’s losses” (Brancaleone v Mesagna, 290 AD2d 467, 468 [2d Dept 2002]; see Glenn v Hoteltron Sys., 74 NY2d 386, 392-393 [1989]; Wolf v Rand, 258 AD2d 401, 403 [1st Dept 1999]). While a shareholder generally cannot, as such, maintain an individual cause of action against a corporation, “[exceptions to that rule have been recognized when the wrongdoer has breached a duty owed to the shareholder independent of any duty owing to the corporation wronged” (Abrams, 66 NY2d at 953; see also Higgins v New York Stock Exch., Inc., 10 Misc 3d 257, 264 [Sup Ct, NY County 2005] [holding that a shareholder has standing to assert a direct claim “against a corporation where the shareholder alleges breach of a duty owed independent of any duty owed to the corporation”]). Claims including the “denial of access to the corporate books and records” of a *1032 cooperative and the “withholding of financial information relating to [an LLC]” have been held to be individual (see Roy v Vayntrub, 15 Misc 3d 1127[A], 2007 NY Slip Op 50868[U], *4 [Sup Ct, Nassau County 2007]; Arfa v Zamir, 2008 NY Slip Op 33348[U], *5 [Sup Ct, NY County 2008]). Thus, to the extent that Denise has a claim against Phyllis for the breach of a duty unrelated to the rights of the Partnership, or a claim against the Partnership for losses sustained personally, she may assert such claims in her individual capacity, but she may not comingle them with claims that belong to the Partnership.
Generally, the caption of a derivative action will list plaintiffs by name and indicate that they are bringing the action in an individual capacity and on behalf of the partnership. In this matter, the caption identifies the plaintiffs individually but does not indicate that they are bringing the action derivatively. The only cause of action that is identified as a derivative claim is the fifth cause of action which states that “[p]laintiff DENISE PERRET WALLACE brings this action on behalf of herself and all others similarly situated, for the benefit and the right of the [Partnership].”[8] However, a review of the complaint demonstrates that the relief sought in each cause of action is for the benefit of the plaintiffs, both individually and on behalf of the Partnership. Accordingly, the complaint must be dismissed as each of the five causes , of action improperly seek to vindicate both the personal rights of Denise in her individual capacity and the derivative claims of the limited partnership.
The first cause of action, for breach of contract, includes over 50 claims, including allegations that Phyllis breached the Agreement by refusing to allow Denise to participate in the management of the Partnership, denying Denise access to the books, records, and financial accounts of the Partnership, diverting the *1033 Partnership’s profits to herself, and failing to make distributions to the partners in violation of articles 3.1 and 4.8 of the Agreement. As article 3.1 provides for distributions to limited partners according to each partner’s percentage interest, recovery upon the allegation that Phyllis failed to make distributions to the partners in violation of article 3.1 would benefit all of the partners and would thus inure to the benefit of the Partnership. Similarly, claims relating to the diversion of assets by a general partner belong to the partnership and may only be alleged derivatively, not individually (see Elenson, 215 AD2d at 429; Abrams, 66 NY2d at 953; Strain, 75 AD2d at 371). However, article 4.8 of the Agreement only provides for the general partner’s compensation. Therefore any allegations with respect to Denise’s compensation as a general partner would not be for the benefit of the Partnership and are personal to Denise. Similarly, Denise’s claim that she was denied access to the books and records is an individual claim (see Roy, 15 Misc 3d 1127[A], 2007 NY Slip Op 50868[U] [2007]; Arfa, 2008 NY Slip Op 33348[U] [2008]). As the first cause of action confuses derivative and individual claims, the first cause of action must be dismissed (see Abrams, 66 NY2d at 953; Baliotti, 134 AD2d at 555).
The second through fifth causes of action, largely redundant of the first cause of action, similarly mingle individual and derivative claims. The second cause of action, for breach of fiduciary duty, includes derivative claims that Phyllis took excessive management fees, personally diverted funds from the Partnership, and failed to pay distributions to partners. However, it also includes individual claims that Phyllis restricted Denise’s access to the books and records of the Partnership, failed to provide an accounting to Denise, and excluded Denise from acting as a general partner. The third cause of action, for conversion, includes derivative claims that Phyllis took excessive management fees, paid legal and accounting fees without obtaining Denise’s consent as the general partner, and an individual claim that Phyllis converted four pieces of real property that Denise “has title in and the right to possession.” The fourth cause of action, for a preliminary injunction, claims that Phyllis has agreed to sell the Partnership’s real property without consulting Denise or receiving her consent in violation of the Agreement. In opposition to the motion to dismiss, plaintiffs expressly argue that “the lock out by defendant [Phyllis] of plaintiff [Denise] from acting as a General Partner is an individ *1034 ual claim.” Accordingly, the fourth cause of action includes an individual claim as to Denise’s alleged “lock out” of the Partnership and a derivative claim as the Partnership’s property is alleged to have been sold in violation of the Agreement. The fifth cause of action, a purported “derivative claim,” includes individual claims that Phyllis has denied Denise’s claim for a final accounting, intends to continue to operate the Partnership without compensating Denise for her interest in the Partnership, and that Denise “expended money for attorney’s fees in order to collect money and property converted by [Phyllis].” As the second through fifth causes of action each mingle individual and derivative causes of action, they must be dismissed (see Abrams, 66 NY2d at 953; Baliotti, 134 AD2d at 555).
To the extent that plaintiffs seek to litigate the individual causes of action, plaintiff Denise is granted leave to replead her individual causes of action (see Abrams, 66 NY2d at 953). However, plaintiffs are not entitled to replead causes of action that are derivative in nature as the limited partners, pursuant to the terms of the Agreement, have broken the deadlock between the general partners and ratified the validity of Phyllis’ actions by their majority vote. In light of the majority vote by the limited partners to “withdraw” this action on behalf of the Partnership, constituting a decision by at least 70% of the Partnership that continuation of the derivative action is not in their best interests, it is clear that the plaintiffs will not be able to fairly represent the interests of the Partnership in a continued derivative action (see Gilbert v Kalikow, 272 AD2d 63 [1st Dept 2000]). However, to the extent that plaintiffs’ efforts in this litigation may have benefitted the Partnership, they may be entitled to recover their costs of litigation pursuant to Partnership Law § 121-1002 (e). Accordingly, a hearing will be held to determine whether the plaintiffs’ pursuit of this derivative action on behalf of the Partnership successfully benefitted the Partnership and whether the plaintiffs are entitled to reasonable expenses, including attorney’s fees.
In light of the findings herein and the dismissal of the complaint, the remainder of the relief sought in plaintiffs’ cross motion, including the enjoining of defendants from implementing the resolutions duly passed at the defendant’s meeting, the appointment of a receiver to manage the affairs of the Partnership, and an order compelling Phyllis to appear for a deposition, is denied.
*1035 Conclusion
Accordingly, the complaint is dismissed for failure to state a cause of action except to the extent that a hearing is scheduled for September 23, 2010, pursuant to Partnership Law § 121-1002 (e), to establish whether plaintiffs are entitled to reasonable expenses, including attorney’s fees, incurred in the pursuit of this action to date.
Plaintiffs’ cross motion is denied, except to the extent that a hearing is scheduled pursuant to Partnership Law § 121-1002 (e).
Plaintiff Denise C. Ferret Wallace is granted leave to replead individual causes of action consistent with this decision.

. It is noted that while the Amended and Restated Partnership Agreement was submitted in support of the motion, it appears to be incomplete. Section 1.4 of the Agreement notes that the Partnership was “formed for the purpose of receiving, managing and disposing of the business interest more particularly described in Schedule II hereto.” The exhibit does not include “Schedule II.” However, the parties do not dispute the assets that remain in the possession of the Partnership.

. The limited partners listed in the original Agreement are general partners Robert Perret and Phyllis Perret, Robert’s daughter, Denise C. Perret Wallace, and her husband, Steven Wallace, Michael Latriano, Louise Terry, Kenneth Terry, Peter Latriano, Leilani Latriano, Maria Dixon, Patrick Dixon, Blaise Latriano, Jena Marie Latriano, Janine Bongiorni, William Bongiorni, Therese Crowley, Douglas Crowley, Michael Steven Perret, and Catherine Louise Perret, apparently all family members. Zachary Evan Wallace, with Denise and Steven as natural guardians, was subsequently added as a limited partner.

. The court also permitted limited partner Michael Perret to intervene but denied the motion to the extent he sought to intervene as a representative *1026 of the Partnership against both general partners and obtain dismissal of the instant litigation as against the Partnership. On January 22, 2010, on consent, Michael Ferret withdrew as intervener.

. Denise and Steven are the parents of Zachary Wallace and have a proxy for his partnership interest.

. In the cross motion, plaintiffs argue that they have “at least a 24.5% interest in the Partnership” while Phyllis “has less than a 4% interest in the Partnership.” Defendants argue that plaintiffs’ and Phyllis’ combined interest “constituted approximately 26.8337% of the partnership shares.” However, neither counsel has provided documentation establishing these ownership interests. The Agreement, provided by both counsel, includes three schedules listing the ownership interests of the general and limited partners. Two are undated and one lists a date of “January 2000.” All three schedules list different percentages of ownership interest for the parties and none of the schedules list the ownership interests as argued by the parties in their respective motions. However, it is not contested that the combined interests of the partners who participated in the December 9, 2009 meeting were less than 30% of the Partnership. Accordingly, the remaining nonparticipating limited partners necessarily own more than 70% of the Partnership.

. Even if the vote to appoint Marc Elliott as counsel for the Partnership at the plaintiffs meeting were valid, the Partnership voted to “disavow” such action and for the appointment of different counsel the following day at the defendant’s meeting, thereby overturning the earlier vote.

. Although defendants moved pursuant to Partnership Law § 115-a (4), it appears that the Agreement is governed by the Revised Limited Partnership Act (Partnership Law § 121-1002 [d]) as article 10 of the Agreement indicates that all references to the Partnership Law in the Agreement refer to the Revised Limited Partnership Act. However, the language of Partnership Law § 121-1002 (d) and § 115-a (4) is nearly identical and they have no substantive differences.

. It is noted that, other than identifying Steven as a limited partner, the complaint does not reference Steven individually or claim any individual damages as to Steven other than, presumably, the damages allegedly incurred by all of the limited partners. The “derivative” fifth cause of action suggests that only Denise is bringing the action on behalf of the Partnership. The First Department has dismissed a derivative action pursuant to Partnership Law § 115-a (1) and (2) where the plaintiffs were both general and limited partners and no other limited partners had joined in the derivative action (see Stark v Goldberg, 297 AD2d 203, 204 [1st Dept 2002] [finding that such dual interest is insufficient to confer standing to bring a derivative action under the statute]). Although the caption is improper and the “derivative” cause of action is inarticulately pleaded, Steven, a limited partner, is a plaintiff in this action and his participation therefore satisfies the Partnership Law § 115-a (1) and (2) and § 121-1002 (b) requirement that the action be brought in the right of a limited partner.