Herman BERMAN, ind. and t/a Scott Construction Company, et al.

v.

Seymour HERRICK and Abraham Kamber, ind. and t/a Lewis Tower Building, Philadelphia, Pa.

Civ. A. No. 29164.

United States District Court
E. D. Pennsylvania.
July 6, 1964.

See also 30 F.R.D. 9.

Nathan Lavine, Melvin Lashner, Paul Shalita, Adelman & Lavine, Philadelphia, Pa., for plaintiffs.

Louis J. Goffman, Michael L. Temin, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for defendants.

James M. Richardson, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for W. Kramer Associates, Inc., intervening plaintiff.

GRIM, District Judge.

From April 1, 1959 to December 1, 1960, a corporation known as L.B.T. Co. operated the Lewis Tower Building, a center-city Philadelphia office building, pursuant to an agreement with the owners of that building. During this period of time, plaintiffs contracted with L.B.T. Co. to supply equipment and services for the maintenance and improvement of the Lewis Tower Building. As of this date over $100,000 remains unpaid on the bills for these improvements and services. In this diversity action, these suppliers seek recovery of the amount of their bills from the defendants who were the owners of the Lewis Tower Building during this period of time. A non-jury trial has been held and the case is presently before the court for the purpose of rendering findings of fact and conclusions of law.

■■ Recognizing that under ordinary common-law principles, a creditor of a tenant who makes improvements to the landlord's premises at the exclusive direction of the tenant, generally has no claim against the landlord for the value of these improvements, 32 Am.Jur., Landlord and Tenant, § 778 at 664, the plaintiffs seek to impose liability on the defendant landlords here on a theory of unjust enrichment, which is a recognized principle of Pennsylvania law. DeGasperi v. Valicenti, 198 Pa.Super. 455, 181 A.2d 862 (1962).

The evidence shows that in 1956 defendants, Seymour Herrick and Abraham Kamber, acquired title to the Lewis Tower Building. They were partners in a limited partnership known as Philadelphia Tower Company, which had been

formed under the law of the state of New York with the defendants, Herrick and Kamber, as general partners and with many limited partners. Defendants, after the 1956 purchase, turned over the management of the building to various parties. In 1958 defendants formed their own corporation to operate the building, which corporation designated William Bamberger managing agent for the building. He was instructed to deal in general business matters concerning the building with Nathan Kupin, a limited partner of the above-mentioned partnership.

The corporation formed by the defendants to operate the building did not make a profit, the rental income being sufficient only to pay the carrying charges, taxes, interest and amortization on mortgages on the building. In the fall of 1958, William Bamberger, the managing agent, advised the defendants that unless substantial improvements were made to the Lewis Tower Building, the rate of occupancy which was then approximately fifty-five per cent would decrease.

In February of 1959, Nathan Kupin, one of the limited partners, together with Arthur Feinstein, who was the attorney for the owners of the Lewis Tower Building, came to Philadelphia where they met with William Bamberger. At that meeting Nathan Kupin told Bamberger that if Bamberger would organize a group of investors to advance $150,000 to be used for the first year's rent and for certain specified improvements to the building, he, Kupin, would be able to get a favorable lease for the investors from the owners of the building. At this meeting there also was some discussion as to Nathan Kupin's receiving fifty per cent of the stock of the proposed new corporation to be organized by the investors in return for his obtaining a favorable lease from the New York owners of the building.

Bamberger subsequently did obtain the necessary investments and L.B.T. Co., a Pennsylvania corporation, was formed by the investors and Kupin to operate the Lewis Tower Building. For a nominal consideration, Nathan Kupin received fifty per cent of the stock of the corporation, was elected president and if the corporation had prospered he would have profited substantially. The defendants agreed with L.B.T. Co. to accept a substantial reduction in rent, and give L.B.T. Co. an option to buy the building in return for L.B.T.'s promise to spend approximately $125,000 for specified improvements to the building. Subsequently L.B.T. Co. paid the first year's rent of $25,000 and contracted with the plaintiff suppliers for the improvements to the Lewis Tower Building specified in the defendants' agreement with L.B.T. Co. as well as other improvements necessary to prepare quarters for new tenants. The aggregate cost of these improvements was approximately $240,000, well in excess of the amount originally set aside by L.B.T. Co. for improvements. It is the recovery of the unpaid balance of this $240,000 which the plaintiff suppliers seek in this suit against the defendants.

In the spring of 1960, L.B.T. Co. negotiated a $150,000 loan from a Philadelphia bank and obtained from the defendant landlords a reduction in rent for the second year of the lease as well as a commitment that no more building improvements need be made to satisfy the conditions of the lease. However, L.B.T. Co. continued to have financial difficulties. Nathan Kupin resigned as president of the company and finally on December 1, 1960 the defendants, in a letter signed by Nathan Kupin as their "authorized agent", terminated the agreement with L.B.T. Co. and resumed possession of the Lewis Tower Building.

Plaintiffs assert that defendants, through Nathan Kupin, knew that L.B.T. Co. was under-capitalized in view of the large improvement program planned and knew that L.B.T. Co. was unable to pay for the improvements ordered, that through Nathan Kupin they authorized these improvements and that when the building occupancy rate had increased to ninety-two per cent and the monthly rental income increased by $5,000, they terminated their agreement with L.B.T. Co.

and reaped the benefit of a substantially improved building without any obligation to pay for the improvements.

Plaintiffs' case rests or falls on the relationship between the defendants and Nathan Kupin. If, in fact, Nathan Kupin participated in the ownership and operation of L.B.T. Co. as the agent of the defendants and, if in that capacity, he agreed to the $240,000 improvement program when he should have realized L.B.T. Co. was unable to pay for these improvements, then there would be ground for holding that the defendants were unjustly enriched when, upon termination of the agreement with L.B.T. Co., they obtained a substantially improved office building without any obligation to pay for the improvements.

However, the facts of this case do not justify such a conclusion. Although Nathan Kupin was a long time personal friend of the defendants and one of their limited partners, I am of the opinion, and so find from the evidence, that his participation in L.B.T. Co. was not as an agent of defendants; it was solely on his own initiative and for his own personal benefit. He had not discussed with defendants the formation of L.B.T. Co. or any of its related problems before the corporation was formed. The evidence does not support a finding of express or implied authority in Kupin under general principles of agency law to negotiate for the defendants with respect to the formation and management of L.B.T. Co., or to secure an interest in L.B.T. Co. on their behalf or in any manner to participate in the contracting for the improvements to the Lewis Tower Building, which are the subject of this suit. At the meeting with William Bamberger in Philadelphia in February of 1959, Kupin was not authorized by defendants to promise that he could obtain a reduction in the rent. Indeed there is no evidence that this subject was ever discussed by Kupin and defendants prior to this meeting. Finally, there is no evidence that the defendants ever ratified or participated in the pre-incorporation and post-incorporation activities of Nathan Kupin with regard to L.B.T. Co.

It should be observed at this point that although Kupin was a limited partner in the New York partnership in which the defendants, Herrick and Kamber, were the general partners, that status alone did not vest Kupin with authority to act for or bind the partnership or the general partners. 68 C.J.S. Partnership § 478 at p. 1026; 38 McKinney's Consolidated Laws of N.Y. Annotated, c. 39, Partnership Law, § 98, § 99. See Skolny v. Richter, 139 App.Div. 534, 124 N.Y.S. 152, 155 (1910).

The testimony and evidence does not warrant the conclusion that Kupin's fifty per cent interest in L.B.T. Co. was held for the benefit of the defendants or that Kupin's actions and knowledge as president and fifty per cent stockholder of L.B.T. Co., with relation to the improvements program at the Lewis Tower Building, can be attributed to the defendants.

Likewise, although Arthur Feinstein, the defendants' attorney, was present at the conference with Kupin and Bamberger in February of 1959, he was only "interested in whether a lease could be worked out where under * * * Mr. Bamberger's aegis, a group would be formed to take a lease of this property." He "could have recommended to the owners what * * * [he] thought was the situation * * * [but he] couldn't deliver it [the lease] nor could Mr. Kupin * * * [He] could go back to the owners and make suggestions or recommendations, and they could decide whether or not to make this deal with Mr. Bamberger."[1] Neither Kupin nor Feinstein had authority to bind defendants to pay for the cost of the building improvements to be made by the Bamberger group.

It may well be that L.B.T. Co. was overambitious in its improvement plans in view of its limited liquid resources available to pay the short term obligations for these improvements, but there

---

1. Notes of Testimony, pp. 173, 174, 175.

is no basis for imputing to the defendants knowledge of, or acquiescence in, this overambitious program of improvements. Moreover, there is no evidence that any of the plaintiffs dealt with or relied on the credit of anyone other than the corporation, L.B.T. Co. Hence I cannot find that there was any legal reason why the defendants should not have been permitted to exercise their right to terminate the agreement with L.B.T. Co. upon its failure to make the required mortgage and tax payments, even though as a result of this termination, defendants repossessed a substantially improved building without any contractual obligation to pay for the improvements.

The case of DeGasperi v. Valicenti, 198 Pa.Super. 455, 181 A.2d 862 (1962), upon which plaintiffs rely so heavily, is distinguishable from the facts of this case. In that case a husband contracted with the plaintiff for some masonry work to be done on houses that the husband was building on property owned by his wife. There was evidence that under a "family arrangement" the wife held title to the land on which the husband was building houses, that payments for construction contracts were made from a bank account in the wife's name and that upon sale of a house and lot, the proceeds were used to pay outstanding construction contractors before paying the wife for the lot. Under these circumstances, the Pennsylvania court held that an unpaid creditor of the husband could recover a judgment from the wife on the theory of unjust enrichment.

In this case there is no evidence of a "family arrangement" between Kupin or L.B.T. Co. and the defendants. The plaintiff suppliers contracted with a corporate operator of the Lewis Tower Building under a written agreement on file in the office of the Recorder of Deeds; they did not contract with the defendants. The defendant owners are not liable for the value of improvements to the Lewis Tower Building under contracts executed between the corporate operator, L.B.T. Co. and the plaintiff suppliers.

The statements made herein will constitute the court's findings of fact and conclusions of law in this case.

### ORDER

And now, this 6th day of July, 1964, the court directs the Clerk of the Court to enter judgment in favor of the defendants, Seymour Herrick and Abraham Kamber, ind. and trading as Lewis Tower Building, and against the plaintiff, Herman Berman, ind. and trading as Scott Construction, and against the intervening plaintiffs, Modern Floor, Inc., General Electric Supply Co. and Hotpoint, Divisions of General Electric Co., Jenkins Elevator and Machine Co. Inc., Westinghouse Electric Supply Co., Division of Westinghouse Electric Co., Franklin Electric Company, and Tripoli Company, Inc., and W. Kramer Associates, Inc.