No. 45,453

PHILLIP VAN HEUSEN, INC., *Appellee,* v. THOMAS A. KORN (*Appellant*) and THOMAS L. KORN.

(460 P. 2d 549)

Opinion filed November 8, 1969.

*J. Willard Haynes,* of Kansas City, argued the cause and was on the brief for appellant.

*Eldon L. Hagan,* of Kansas City, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

FATZER, J.: This was an action on an open account brought by Phillip Van Heusen, Inc., appellee, against the defendant, Thomas L. Korn, and the appellant, Thomas A. Korn, as partners and individuals doing business as The Varsity Shop. Trial was by the court which rendered judgment in favor of the plaintiff and against the defendant and the appellant in the sum of $2,020.42. Thomas A. Korn has appealed, and Thomas L. Korn did not appeal.

The appellant, Thomas A. Korn, is the father of Thomas L. Korn, and the parties will be referred to as father and son.

The father owned and operated the Kansas Power Lawn Mower Service in an office building he owned at 1405 North 38th Street, Kansas City, Kansas. The son was employed by the father at his lawn mower place of business. During the summer of 1964, the son mentioned to his father the possibility of putting another business in his building, and a small clothing shop was mentioned. The father and son discussed the matter for six or eight weeks, when it was agreed that the father would help the son start the clothing business and use his credit for starting it. It was also agreed that when the business became self-supporting, the son would pay the father $150 a month rent, but no money would be taken out of the clothing business for salary until the business became self-supporting.

As a result of the agreement, the son composed a letter on the Kansas Power Lawn Mower Service letterhead, which was signed by both the father and son. Identical letters were mailed to twenty some clothing suppliers, and each stated the father and son were planning to start a clothing business; that the father was already in business for himself in his office building which had vacant floor space, and they wanted to use some of the space to start a clothing store to be opened on October 25, 1964. Inquiry was made whether it would be possible to stock the company's merchandise and the manner of payment; whether the parties could order the merchandise they wanted or be required to stock unwanted merchandise, and if fixtures would be supplied; whether the company had any type of co-operative advertising program, and when delivery of merchandise could be expected. A floor plan of the space to be

used was enclosed to aid the company in formulating answers to the inquiries, and an immediate reply was requested.

The father signed a note at a bank with his son for $500 and the proceeds were deposited in the Varsity Shop checking account. Signature cards were signed by both the father and son and each wrote checks on the account.

The Varsity Shop was opened on December 15, 1964, and the son placed an order with the Van Heusen Shirt Company, which order was delivered shortly after December 15. It is conceded the merchandise was ordered from Van Heusen by the son and that the amount of the claim was $2,020.42.

On October 7, 1964, August M. DeMarea, the representative of Dun & Bradstreet in Kansas City, placed a telephone call to the Kansas Power Lawn Mower Service office and asked for Thomas Korn. The party who answered the telephone represented himself to be Thomas Korn, and DeMarea informed Korn he had received an inquiry from Dun & Bradstreet's New York Credit Clearing House concerning a Varsity Shop business which was being opened in Kansas City, Kansas. Prior to the telephone call, DeMarea had been furnished only the name of the "Varsity Shop," the address of the lawn mower service, and the name of Thomas Korn. When DeMarea was advised Korn was starting the Varsity Shop, he asked questions as to the amount of inventory and fixtures he (Korn) was going to put in; the source of his capital, and who would manage the shop. His only contact with Thomas Korn was the telephone call made on October 7. DeMarea made notes of the telephone interview, which formed the basis of the following report forwarded to the New York Office:

"Dun & Bradstreet Report

| "Name & Address | Started | Rating |
|---|---|---|
| "Special Notice. SN 65 Oct 7 1964 A | | |
| "Kansas Power Mower Sales and Service | | |
| "+ Varsity Shop | | |
| "Lawn Mower Sales & Service | 1958 | C + 1½ |
| & Retail Men's Clothing | | |
| "1405 N. 38th Street | | |
| "Kansas City 1 Kan | | |

"NEW LINE

"October 7 1964 Thomas A Korn stated he was opening a mens clothing store under style Varsity Shop about November 1, 1964. Business will be managed by son. Opening inventory will be between $30,000-$34,000. Fixture

and equipment will be valued between $4,000-5,000. Korn stated financing would be from own funds. No borrowing will be done.
"10-7 (51 121)"
(Exhibit No. 14.)

DeMarea testified he wrote the special report immediately after talking with Korn, and that there would be no reason for him to report the conversation inaccurately; further, that the purpose of the report was to supply information to a subscriber of Dun & Bradstreet in New York with respect to the inventory to be stocked in the Varsity Shop; who owned the business, and who would pay the accounts.

Vincent V. Rathman, general credit manager of Van Heusen, testified his company received the special report from Dun & Bradstreet, and it extended credit based on that report and the financial responsibility of Thomas A. Korn of the Kansas Power Mower Sales & Service. The report was identified as Exhibit No. 14, and admitted into evidence over the appellant's objection that it was hearsay since it was not a record of the appellee, but was a record of another organization.

Thomas A. Korn testified on direct examination he received only one telephone call from a man representing himself to be from Dun & Bradstreet who made inquiry about the Varsity Shop. Korn could not recall the man's name. The telephone conversation was in the late summer of 1964, and it could have been in October. Korn testified he informed the Dun & Bradstreet representative the Varsity Shop had no connection with his lawn mower shop and that he had nothing to do with it; that it was his son's business. He further testified that he did not inform the representative that financing of the Varsity Shop would be from his own funds and that no borrowing would be done. On cross-examination he testified that in the summer of 1964 he agreed with his son to go into a partnership and open a clothing store, but that he never told anyone about it—particularly creditors because there were none—and that he never called or wrote Dun & Bradstreet for anything in his life.

The appellant first contends the district court erred in admitting into evidence Exhibit No. 14 and the testimony of DeMarea. The case was tried on the theory that Van Heusen sold the merchandise in question on the basis of representations made by Thomas A.

Korn to a representative of Dun & Bradstreet that he would be responsible for merchandise sold to the Varsity Shop, and that the appellee acted in reliance on those representations.

The general rule is that a credit report of a commercial or credit reporting agency such as Dun & Bradstreet is not admissible in evidence as against a third party who did not in any way participate in making or publishing the report. (32 C. J. S., Evidence, § 731, p. 1054; 15 Am. Jur. 2d, Collection and Credit Agencies, § 5, p. 554; 36 Am. Jur., Mercantile Agencies, § 4, p. 179.) However, it is equally well settled that where the third person or one sought to be bound supplies the information upon which the report was made, or in some way ratifies or participates in publishing the report, the report may be admissible against him. (85 A. L. R. 2d, Anno: Evidence—Credit Report—Third Person, § 3, p. 439.) This is particularly true where the compiler of the report appears as a witness, the preliminary statement on which it is based is in evidence, and the party sought to be bound has made representations with respect to the report. It is likewise the general rule that a statement made to a commercial or credit reporting agency is admissible as an admission against the interest of the party making it. (*Trainor v. Buchanan Coal Co.*, 154 Minn. 204, 191 N. W. 431; *Frank v. Brown Hardware Company*, 10 Tex. Civ. App., 430, 31 S. W. 64; *National Bank of Merrill v. Illinois & Wisconsin Lumber Co.*, 101 Wis. 247, 77 N. W. 185.)

Moreover, the objection to the special credit report was not well taken for another reason. Implicit in the district court's ruling admitting Exhibit No. 14 in evidence was its finding that the memoranda of events therein related was made in the regular course of business at or about the time recorded, and that the source of information from which made and the circumstance of its preparation, were such as to indicate its trustworthiness. As such, the special report was a business entry and constituted an exception to the hearsay rule. (K. S. A. 60-460 [m].)

In the instant case, the record shows that DeMarea made only one telephone call to the appellant who supplied information which DeMarea placed in his special report to the New York office. On that point, the only conflict in the evidence was that Korn denied making the representations which DeMarea reported he made.

Since the district court resolved this conflict in favor of the appellee, it is conclusive on this court. (*Collins v. Merrick,* 202 Kan. 276, 448 P. 2d 1.)

In *McAdam v. Fireman's Fund Insurance Co.,* 203 Kan. 123, 452 P. 2d 851, it was held:

"Where the evidence is heard orally by the district court, its findings thereon have the force and effect of a jury's verdict and if supported by substantial evidence, they will not be disturbed on appellate review." (Syl. ¶ 1.)

The accuracy and admissibility of the reporting service of Dun & Bradstreet was involved in *Pump-It, Inc. v. Alexander,* 230 Minn. 564, 42 N. W. 2d 337, and it was said:

"On the other hand, there is no apparent reason why a disinterested representative of a reputable commercial agency should misrepresent or color the truth. The salability of his employer's service and his position depend upon the accuracy of the reports. These reports are compiled by a regular procedure and enjoy a good reputation in the business community. See, Davis v. Louisville Trust Co. (6 Cir.) 181 F. 10, 30 L. R. A. (NS) 1011 . . ."

In light of the testimony of the appellant, and DeMarea, and the testimony of the son, who voluntarily testified for the appellee, as to the agreement between him and his father under which the Varsity Shop was started in the father's building and that his father agreed to let him use his credit to obtain merchandise and his co-operation in sending letters to suppliers, the district court did not err in admitting in evidence the special report and the telephone conversation of October 7, 1964, subject to the usual tests for weight and credibility. (29 Am. Jur. 2d, Evidence, §§ 382, 383, pp. 433, 434; K. S. A. 60-460 [*m*].)

It is further contended the district court erred in finding the appellant was estopped to deny his liability to the appellee. The district court found there was no actual partnership between the father and son, but further found from the evidence that credit was extended by the appellee on the basis of representations made by the appellant, or on representations made with his knowledge and assent and that he was liable for the goods furnished. Based on that finding, the district court concluded the appellant was estopped to deny his liability. We find no error.

The appellee affirmatively pleaded the existence of a partnership between the father and son. That allegation was denied by the appellant, and there was no pretrial order defining the issues of

fact and law. When the appellee's allegation of partnership was denied, it had to fall back on the rule of law which holds that a person whose course of conduct leads another to believe he is a partner, and the party misled extends credit in reliance thereon, such person is liable as if he were a partner in fact. (*Rider v. Hammell,* 63 Kan. 733, 739, 66 Pac. 1026; *Clark v. Crouse,* 130 Kan. 177, 180, 285 Pac. 577; *Goetz v. Howland,* 139 Kan. 1, 30 P. 2d 101; *John Deere Plow Co. v. Klaurens,* 153 Kan. 151, 109 P. 2d 98, Syl. ¶ 4, and cases cited.) This court has consistently applied the rule that one may estop himself from denying his liability as a partner, where such relationship does not exist in fact, by holding himself out as such, or by negligently permitting one with whom he is engaged in business to do so. The rule is stated in 68 C. J. S., Partnership, § 32, p. 457, as follows:

"Any act, representation, or conduct on the part of a person, reasonably calculated to induce the belief that he is a partner, constitutes a holding out, with respect to whether a partnership will be held to exist as to third persons."

See, also, 40 Am. Jur., Partnership, §§ 71, 72, pp. 178-180.

The foregoing disposes of the points urged by the appellant. We have fully reviewed the record and conclude the judgment entered by the district court was correct. The appellant should not be allowed to escape the consequences of holding out his credit in the manner disclosed by the record, and then withdraw it when it appears that the business would fail and he might become liable.

The judgment of the district court is affirmed.