**GENERAL ELECTRIC CREDIT CORPORATION, Respondent/Appellant,**

v.

**Richard Gale STOVER, Appellant/Respondent.**

**WD 36183.**

Missouri Court of Appeals, Western District.

April 8, 1986.

Truman K. Eldridge, Jr., Donald G. Scott, Dietrich, Davis, Dicus, Rolands, Schmitt & Gorman, Kansas City, for re-

spondent/appellant, General Elec. Credit Corp.

Roberta F. Farrell, Jolley, Moran, Walsh Hager & Gordon, Kansas City, for appellant/respondent.

Before LOWENSTEIN, P.J., SHANGLER, J., and SOMERVILLE, Senior Judge.

SHANGLER, Judge.

The plaintiff General Electric Credit Corporation [GE Credit] sued Paul T. Linnane, doing business as Linnane Magnavox Home Entertainment Center, and Richard Gale Stover on two written contracts. Linnane Magnavox was organized as a limited partnership under the law of Kansas, with Linnane as the general partner and Stover as the limited partner. Paul Linnane and wife Linda Linnane were adjudicated bankrupts, and Paul Linnane was discharged from liability under the contracts in suit. In due course, Linnane was dismissed as a party defendant.

The suit presented to the trial court the question whether the Stover signature to an Agreement Non-Recourse Plan and to a separate Security Agreement negotiated by general partner Linnane with GE Credit constituted an assumption of personal liability under the documents. A term of the Agreement Non-Recourse Plan was the Linnane Magnavox promise to indemnify GE Credit against expenses for attorney fees incurred as the result of the breach of any warranty in the agreement. A term of the Security Agreement was the Linnane Magnavox promise to pay GE Credit a reasonable attorney fee incurred in the enforcement of its rights and remedies after default.

The cause was submitted to the court for adjudication on the pleadings, interrogatories, exhibits, depositions and stipulation of facts. The court adjudged that Linnane Magnavox was in breach of agreement and, implicitly, in default under the security promise. The court found that the breach of the agreements were proven and awarded GE Credit $14,951.01 with interest, but found that the claim for attorney fee was not proven and denied that claim. Stover appeals the judgment entered against him, and GE Credit appeals the judgment to deny an attorney fee. The parties agree that the law of Kansas governs.

In September of 1977, Paul Linnane and Richard Stover entered into an agreement for a limited partnership under the name *Linnane Magnavox Home Entertainment Center* and conducted business in Johnson County, Kansas. Stover agreed to become a limited partner with a capital contribution of $6,000 and Linnane agreed to be the general partner. Linnane Magnavox was thereafter certified as a properly organized limited partnership by the Secretary of State of Kansas.

Negotiations between Linanne and McNew, Credit Manager for GE Credit, culminated in two agreements: an Agreement Non-Recourse Plan and a Security Agreement. Stover did not participate in those negotiations, but at the request of GE Credit and before GE Credit approved these agreements, Stover furnished that company a copy of his personal financial statement.

The Agreement Non-Recourse Plan was executed on November 15, 1977 on behalf of GE Credit by McNew and on behalf of Linnane Magnavox by Linnane and Stover:

AGREEMENT NON–RECOURSE PLAN

. . . .

. . . .

IN WITNESS WHEREOF this agreement is hereby executed and sealed this 15th day of Nov., 1977

Signature  Linnane Magnavox
(Firm Name) If corporation, two authorized officers sign below.

By /s/  Paul T. Linnane
                    Officer, Partner, Owner

By /s/   Richard G. Stover
_____
                    Officer, Partner, Owner
Business Address
    10393 Metcalf
    Overland Park, Kansas 66212
_____

ACCEPTED:
            GENERAL ELECTRIC CREDIT CORPORATION
By /s/   Frederick J. McNew
_____
                    Title:  Credit & Collection Mgr.
Date     11–15–77
_____
At        Kansas City, Missouri
_____
                            City

---

The Security Agreement was executed on May 25, 1978 on behalf of GE Credit by McNew and on behalf of Linnane Magnavox by Linnane and Stover:

## SECURITY AGREEMENT

. . . .

. . . .

       If the foregoing is acceptable to you, please so indicate at the foot of this letter. Notice of your acceptance is hereby waived.

Linnane Magnavox
10393 Metcalf
Overland Park, Kansas 66212
_____
                            Dealer

By /s/  Paul T. Linnane
_____
(Pres.-Partner, Owner)
Paul Linnane

By /s/  Richard G. Stover
_____
(V. Pres., Secy., Treas.,
Partner) Richard G. Stover

Accepted:
GENERAL ELECTRIC CREDIT CORPORATION
By  /s/  Frederick J. McNew
_____
                Branch Manager
Date      5–25–78
_____

---

GE Credit agreed under the terms of the Non-Recourse Plan to purchase certain customer accounts and Linnane agreed that the purchases be without recourse, except for the breach of specified warranties. Linnane Magnavox warranted as to each account sold to GE Credit under the plan, that the equipment covered was delivered and installed and accepted by the customer-buyer, and that the contract of such account described a valid deferred payment obligation enforceable by GE Credit against the customer-buyer. Linnane Magnavox promised to indemnify GE Credit against damages, claims and attorney fees from breach of that warranty. The Security Agreement provided for GE Credit advances to Linnane Magnavox for the purchase of inventory and the Linnane Magnavox promise to repay within ninety days thereafter, or at the time the inventory was sold, or upon sooner demand. Linnane Magnavox executed as collateral a financing statement in favor of GE Credit on the business inventory and proceeds, equipment and accounts. Linnane Magnavox agreed, as a term of the Security Agreement, in the case of default, that all indebt-

edness was due and payable and that GE Credit be entitled to interest and an attorney fee to enforce its rights thereunder.

GE Credit purchased a number of customer contracts from Linnane Magnavox under the agreements, among them, three accounts where the equipment had not been previously delivered, installed and accepted by the buyers, as warranted by Linnane Magnavox. GE Credit fulfilled those customer contracts, and made demand on Linnane Magnavox for $3,187.92 due under the Non-Recourse Plan warranty. Then, in May of 1980, Linnane Magnavox defaulted under the Security Agreement floor plan inventory financing, and GE Credit took possession of the Linnane Magnavox inventory. GE Credit made demand for payment of $11,763.09 due under the Security Agreement, and thereafter sued to recover the money due under both agreements.

It was stipulated as fact that throughout the course of the Linnane Magnavox enterprise, Stover was a limited partner and never owned or possessed power to manage daily affairs of the partnership. Stover took no part in the employment or discharge of any employee, the determination of salary, the purchase of sale of inventory, nor any other such incident of partnership business. Stover neither kept the books or records of the enterprise, nor supervised its accountant, nor wrote partnership checks. The conduct of the business reposed altogether in Paul Linnane.

It was stipulated also [if the court allowed the evidence][1] that GE Credit would not have financed the Linnane Magnavox customer accounts had Stover not signed the Agreement Non-Recourse Plan. It was stipulated also [if the court allowed the evidence][1] that GE Credit would not have extended credit to Linnane Magnavox to finance its inventory had Stover not signed the Security Agreement [and, in fact, GE Credit neither purchased any customer accounts from Linnane Magnavox nor financed any of the inventory until after Stover signed both the Non-Recourse Plan and the Security Agreement]. It was stipulated as fact that prior to the execution of the two agreements GE Credit was not aware of the limited partnership agreement between Linnane and Stover, although GE Credit—through McNew—had become aware that Stover was a silent partner in the Linnane Magnavox partnership. It was stipulated also [if the court allowed the evidence][1] that Stover signed the two agreements at the request of Linnane, intended the signatures only in the capacity of limited partner in Linnane Magnavox, and did not intend to be personally liable on the obligations—but that intention was not communicated to GE Credit.

The case was tried to the court under Rule 73.01, therefore *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976) governs our review. We sustain judgment unless the adjudication is without substantial support in the evidence, is against the weight of the evidence, or erroneously declares the law. The court gave no grounds for its judgment, so we resolve all fact issues in accordance with the judgment rendered and are bound to affirm it if it can be sustained on any theory of law the evidence supports. *Young v. Ray America, Inc.*, 673 S.W.2d 74 78[2] (Mo.App.1984).

The Linnane Magnavox Home Entertainment Center was formed and certified by the Secretary of State of Kansas in Octo-

---

**1.** The case, as we note, was submitted to the trial court for decision on deposition testimony, exhibits, pretrial discovery and an inclusive Stipulation. The recitation of the stipulation agrees to certain matters as unconditional fact, and to others only on condition that the court has received the matters as evidence. For instance, ¶ 10 of the Stipulation reads:

That subject to the objection of defendant as to admissibility if plaintiff's corporate representative were permitted to testify he would say that plaintiff would not have purchased customer accounts from Linnane Magnavox if defendant had not signed said Agreement Non-Recourse Plan; this fact was not communicated directly to defendant.

The judgment entered for GE Credit was unaccompanied by findings of fact or conclusions. We assume throughout our discussion, as we must, that the conditional facts were found in favor of the judgment. There is no complaint on appeal that any of the matters stipulated to as fact on condition that the court has received them in evidence were erroneously admitted.

ber of 1977 as a regularly organized limited partnership under the laws of Kansas. The certificate of limited partnership was then forfeited by the Secretary of State of Kansas in July of 1979. Therefore, the Uniform Limited Partnership Act of 1967 [Kan.Stat.Ann. § 56–101 to § 56–151 (1983)], then extant, appertains to the transactions.[2]

The Uniform Limited Partnership Act enacted by Kansas in 1967, which governs this cause of action, expresses as a premise:

No public policy requires a person who contributes to the capital of a business, acquires an interest in the profits, and some degree of control over the conduct of the business, to become bound for the obligations of the business; *provided creditors have no reason to believe at the times their credits were extended that such person was so bound.*[3] [emphasis added]

The degree of control a limited partner may exercise without risk of liability as a general partner has enlarged with the promulgation of each successive Uniform Limited Partnership Act prototype.[4] In the version of the Act adopted by Kansas for effect on January 1, 1984 [upon the model of the 1976 prototype], the limited partner is allowed a list of business activities—described specifically—that will not constitute control of the business so as to expose the limited partner to liability as a general partner. Kansas Revised Uniform Limited Partnership Act, Kan.Stat.Ann. § 56–1a203 (1983). In the version of the Act adopted by Kansas in 1967, however, the rights and

powers of the limited partner are confined to examination of the partnership books, to call for an accounting, and to demand dissolution [§ 56–131 of the 1967 version of the Kansas Act]. Another section of the Kansas Act of 1967 provides:

56–128 *Limited partners not liable to creditors.* A limited partner shall not become liable as a general partner unless, in addition to the exercise of such partner's rights and powers as a limited partner, he or she takes part in the control of the business.

The limited partnership agreement between Linnane and Stover, at Article IV, not only acknowledges these statutory constraints

The general management, control and conduct of the business shall be vested in the general partner only,

but also imposes the added constraint

*and the limited partner shall have no power or authority to bind the partnership.*

■ It is quite evident that under the law the trial court judgment may not rest on any premise that Stover "[took] part in the control of the business," in violation of § 56–128, and so became liable as a general partner. The *control* which exposes a limited partner to liability as a general partner under § 56–128 and other enactments of a like provision in other jurisdictions is activity which causes the creditor the mistaken belief that the limited partner is a general partner—and that, usually upon evidence that the participation in control by the limited partner was substantially equivalent to

---

**2.** The Uniform Limited Partnership Act of 1967 was superseded by the Revised Uniform Limited Partnership Act of 1984, effective on January 1, 1984. There are differences in these enactments in the emphasis on the role of the limited partner in the enterprise affairs and the basis of liability of the limited partner to third persons. *See* Luttjohann, *Limited Partnerships in Kansas: The New Act,* 7 Washburn L.J. 335 (1968) and Hecker, *The Revised Uniform Limited Partnership Act: Provisions Affecting the Relationship of the Firm and Its Members to Third Parties,* 27 U.Kan.L.Rev. 1 (1978).

**3.** Uniform Limited Partnership Act (1916) § 1, comment, 6 U.L.A. 564 (1969), the prototype for the Uniform Limited Partnership Act of Kansas (1967).

**4.** The National Conference of Commissioners On Uniform State Laws have reported three such formulations: The Uniform Limited Partnership Act of 1916, the successor Revised Uniform Limited Partnership Act of 1976, and the present Uniform Limited Partnership Act of 1985. We delineate this statutory evolution because the Stover brief, quite untenably, argues the several texts interchangeably to support contention.

that of a general partner. *Holzman v. De Escamilla*, 86 Cal.App.2d 858, 195 P.2d 833 (1948); *Gast v. Petsinger*, 228 Pa.Super.Ct. 394, 323 A.2d 371, 375 (1974) and cases cited in *Hecker*, supra, note 2, at 48 n. 243. The general management, control and conduct of the business was vested exclusively in the general partner Linnane by the express terms of the limited partnership agreement. It was a fact stipulated between GE Credit and Stover that "defendant Stover did not exercise day-to-day managerial control over the Linnane Magnavox partnership" and, indeed, no other evidence contradicts that fact. The sanction § 56–128 imposes, moreover, is that a limited partner who exercises the control of the business as a general partner becomes liable as a general partner—and that, whether or not the creditor knows of that exercise of control and management. *Delaney v. Fidelity Lease Ltd.*, 526 S.W.2d 543, 545[2–5] (Tex.1975);

■ A rationale of the Uniform Limited Partnership Act of 1967—quite apart from the general liability § 56–128 imposes for the exercise of the control of the business—gives rise to the personal liability of the limited partner where the creditor has "reason to believe at the time [its] credits were extended that such person [would be] bound." Uniform Limited Partnership Act (1916) § 1, comment 6 U.L.A. 564. That rationale is enacted by §§ 56–126 and 56–127 which impose personal liability upon a limited partner to a third party who suffers loss by reliance on certain statements or conduct of the limited partner. *See Rathke v. Griffith*, 36 Wash.2d 394, 218 P.2d 757, 764 (1950) which construes an identical section of the Act and Comment, *The "Control" Test for Limited Partnerships*, 82 Harv.L.Rev. 1471, 1479 (1968). A limited partner, therefore, who induces a third party to believe that *for that transaction*, he would be personally bound, becomes liable for the loss incurred by that reliance. *Phillip Van Heusen, Inc. v. Korn*, 204 Kan. 172, 460 P.2d 549, 553[7, 8] (1969); *John Deere Plow Co. v. Klaurens*, 153 Kan. 151, 109 P.2d 98, 100[4, 5] (1941). Thus, it is quite irrelevant that the certificate of limited partnership on file with the Secretary of State of Kansas may have imparted constructive knowledge to GE Credit that Linnane was the designated general partner and Stover the limited partner, or that McNew surmised even before the agreements were signed that Stover was the "silent partner"—the partner with "nothing to do with the running of the business." The question for decision was whether GE Credit had "reason to believe at the time [its] credits were extended that such person [Stover] would be bound." That is to say—whether *for the purpose of the two agreements* Stover put his personal assets at stake and GE Credit was thereby induced to extend its credits to the partnership.

■ The evidence before the trial court was that GE Credit would not have purchased the Linnane Magnavox customer accounts, nor extended credit to the enterprise to finance its inventory had not Stover signed the Non-Recourse Plan and the Security Agreement. It was a stipulated fact that prior to the execution of the two agreements, GE Credit requested, and Stover furnished, his personal financial statement. It was known to GE Credit *prior* to the execution of the two agreements that Stover as Guarantor signed a Guarantee of the Linnane Magnavox obligation in favor of Borg-Warner Acceptance. It was known to GE Credit, also, between the execution of the Non-Recourse Plan in November of 1977 and of the Security Agreement in May of 1978 that Stover had not only executed other guarantees of the partnership liabilities, but also had executed business obligations as a general partner. It was stipulated also [if the court allowed the evidence] that Stover would testify he intended to sign the Non-Recourse Plan and the Security Agreement "only in the capacity of a limited partner in Linnane Magnavox and did not intend to be personally liable thereon," but "said intent was not communicated to [GE Credit]."

Thus, the question for decision by the trial court was whether the unconditional

Stover signatures to the two documents were his representations or agreements to be personally bound on those obligations. In terms of contract principle [as some of the arguments pose the issue], the question is that of intention to contract—one of fact. *Arrowhead Construction Co. v. Essex Corp.*, 233 Kan. 241, 662 P.2d 1195, 1201[7] (1983). In terms of partnership principle, the question is that of holding out: whether the Stover signature induced GE Credit to extend credit on reliance that *as to the two transactions*, Stover would be personally bound on those obligations. That question is also one of fact. *Phillip Van Heusen, Inc. v. Korn*, 460 P.2d at 553. On either theory, the judgment of the trial court rests on substantial evidence, and must be sustained. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

■ Stover argues nevertheless, that although his signature appears on both documents without restriction, the law allows "a limited partner [to] act as surety of the partnership without forfeiting limited liability." It is so that the Revised Uniform Limited Partnership Act enacted by Kansas for effect on January 1, 1984 provides that a limited partner does not participate in the control of the business [so as to incur liability] merely by the exercise of the power of agency on behalf of the partnership, but the Non-Recourse Plan and Security Agreement were exercises under the Kansas Act of 1967. A limited partner was without authority to act for or bind the partnership or the general partners under the scheme of that enactment. *Tomlin v. Ceres Corp.*, 507 F.2d 642, 648 (5th Cir.1975); *Berman v. Herrick*, 231 F.Supp. 918 *aff'd* 346 F.2d 116 (3rd Cir.1965), *cert. denied* 382 U.S. 892, 86 S.Ct. 185, 15 L.Ed.2d 150; *Millard v. Newmark & Co.*, 24 A.D.2d 333, 266 N.Y.S.2d 254 (1966). The Limited Partnership Agreement between Linnane and Stover, moreover, was formulated conformably to the governance of the 1967 Act. It provided expressly that "the limited partner shall have no power or authority to bind the partnership." Stover had every reason to know that his unqualified signature on the documents would bind his personal credit, as that of the general partner to whom the power to contract was exclusively confided by the terms of their agreement.

■ Stover argues that the term *By* which antecedes the place for his signature signifies agency and, hence an intention not to be personally bound. We have already responded that under that early version of the Act, only a general partner could bind the partnership by contract. That argument, in any event, ends in redundancy. The Stover signature was either to vouchsafe the contract obligations, or else it was to no purpose. Linnane had already bound the partnership credit to the undertakings by his signature as general partner. Another signature on behalf of the partnership would have been superfluous. The court had before it evidence that the Linnane Magnavox was well operated by Linnane, but that "its capitalization was very weak." Those were stipulated facts as well as facts confirmed by the McNew deposition testimony. "The real money backing came from Mr. Stover," McNew testified, and "that is how they had gotten the line of credit." The court could have determined that GE Credit was not willing to extend credit under the agreements to an undercapitalized limited partnership unless the investor—the limited partner—bound his personal credit to the undertaking. To that end, they obtained his financial statement previously submitted to his bank, secured his commitment to be personally bound, and only then, commenced to purchase the customer contracts and extend credit for inventory.

The judgment in favor of GE Credit for $14,951.01 with interest for breaches of agreements is affirmed.

■ There was also request to the court by GE Credit for an award of $5,000 as an attorney fee. The judgment noticed the provision in the Security Agreement for payment by the Linnane Magnavox signatories of a reasonable fee to GE Credit incurred in enforcement of its rights after default of the Security Agreement, but de-

nied an award on the ground that "there is no stipulation or other evidence upon which the Court can base a judgment for attorney's fees." In fact, *each contract,* the Non-Recourse Plan and the Security Agreement, provided for an attorney fee in favor of GE Credit, one in the form of a promise of indemnity, and the other conditioned upon default of the Linnane Magnavox performance. That appears not only from the terms of the agreements, but also as stipulated facts. The Linnane Magnavox breach of the warranty under the Non-Recourse Plan and the Linnane Magnavox default under the Security Agreement were both stipulated facts. Thus, the claim for an attorney fee under *both* contracts had accrued, and that GE Credit is *entitled* to a reasonable attorney fee incurred in the enforcement of rights under the Security Agreement is stipulated fact as well.[5]

GE Credit appeals from the refusal to award an attorney fee. The question is presented to us as an issue governed by Missouri law, and our review assumes that premise.

■■■ The refusal of the trial court to adjudge an attorney fee for want of evidence was error. A trial court is deemed an expert on the subject of an attorney fee, and needs no evidence or even other opinion as to the value of the services of a participant advocate. *Nelson v. Hotchkiss,* 601 S.W.2d 14, 21[16–21] (Mo. banc 1980). A trial court knows the nature of the work the presentation of the cause entails, the issues, the quality of the professional labor, the expenditure of time—and hence, its value assessed "according to custom, place and circumstance." *Id.* Thus, the trial court may set the value of the attorney fee without evidence, and such a judgment is presumptively reasonable. *Sebree v. Rosen,* 393 S.W.2d 590, 599 (Mo.1965). It is an exercise of discretion which will stand unless the amount awarded manifests arbitrariness, or other want of proper

judicial consideration. *Brown v. Brown,* 495 S.W.2d 89, 92 (Mo.App.1973).

The file before us, as before the trial court, is replete. The pleadings are fully formed, discovery explored, depositions record the testimony of the several principals, the stipulation, memoranda and briefs which accompany the submission of the cause were all labors and necessary services open to the knowledge of the trial court. It was error for the trial court to have denied an award of attorney fee to GE Credit for want of formal evidence. It was competent for the court, of course, to have enlisted the aid of the parties on that issue, but under the circumstances presented, it was an abuse of discretion for the court to have denied an award of attorney fee to GE Credit—and hence rights of contract.

The judgment is reversed only as to the denial of an award of attorney fee to GE Credit, and the cause is remanded with directions that the trial court determine a reasonable attorney fee in favor of GE Credit under the provisions of the Non-Recourse Plan and the Security Agreement and then enter a judgment accordingly.

All concur.

---

**5.** The counterpart stipulations of facts as to the breach of warranty under the Non-Recourse Plan, for a reason not readily apparent, acknowledges the contract provision for an attorney fee, concedes the Linnane Magnavox breach, but does not concede also that the right has accrued.