**Orpha Glee HARRIS, et al., Plaintiffs,**

v.

**OIL RECLAIMING COMPANY, et al., Defendants.**

No. 97–1270–JTM.

United States District Court, D. Kansas.

April 11, 2000.

John S. Seeber, Adams & Jones, Chartered, Wichita, KS, for Orpha Glee Harris, Loree Beeler, Galen Young, Avis Jean Thompson.

George Nelson, Oklahoma City, OK, Edward L. Brown, Jr., Wichita, KS, James A. Choate, George Nelson, P.C., Oklahoma City, OK, Chris H. Eulberg, Eulberg Law Offices, Oklahoma City, OK, for Bill Harrison.

James O Moody, Oklahoma City, OK, pro se.

## MEMORANDUM ORDER

MARTEN, District Judge.

The plaintiffs in the present action are lessors of land containing an oil reclaiming plant in Stafford County, Kansas. They have brought the present action against the lessee (Oil Reclaiming Company, Ltd.); its general partner (Oil Reclaiming Company, Inc.), and several officers of the general partner. Many of the defendants have defaulted or otherwise failed to defend the action. Trial was begun on April 5, 2000 against one individual defendant, Bill Harrison, the former Vice–President of Oil Reclaiming Company, Inc.

Following the conclusion of the plaintiffs' evidence, the defendant Harrison moved for a judgment as a matter of law pursuant to Fed.R.Civ.Pr. 50. Viewing all of the evidence in the light most favorable to the plaintiffs, the court determined that Harrison's motion should be granted. Accordingly, for the reasons stated from the bench, and as further set out herein, the court grants the defendant's motion.

Fed.R.Civ.Pr. 50(a)(1) provides:

If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

 Judgment as a matter of law is appropriate under Rule 50(b) "only if the evidence, viewed in the light most favorable to the nonmoving party, points 'but one way and is susceptible to no reasonable inferences supporting' the nonmoving party." *Riggs v. Scrivner, Inc.*, 927 F.2d 1146, 1149 (10th Cir.) (quoting *Zimmerman v. First Fed. Sav. & Loan Ass'n*, 848 F.2d 1047, 1051 (10th Cir.1988)), *cert. denied*, 502 U.S. 867, 112 S.Ct. 196, 116 L.Ed.2d 156 (1991). Judgment as a matter of law is proper "only if the proof is all one way or so overwhelmingly preponderant in favor of the movant as to permit no other rational conclusion." *J.I. Case Credit Corp. v. Crites*, 851 F.2d 309, 311 (10th Cir.1988). *See also Zuchel v. City and County of Denver, Colorado*, 997 F.2d 730, 734 (10th Cir.1993). "A reviewing court is not permitted to consider the credibility of witnesses in reaching its decision … nor may a court weigh the evidence or determine where the preponderance of the evidence lies." *Zuchel*, 997 F.2d at 734 (internal quotations omitted). Judgment under Rule 50 "should be cautiously and sparingly granted." *Lucas v. Dover Corp.*, 857 F.2d 1397, 1400 (10th Cir.1988).

The plaintiffs have brought two claims against Harrison. First, that he is responsible for spills at the reclaiming plant under the Oil Pollution Act (OPA), 33 U.S.C. § 2701 et seq. (1990), and second, that he was a party to the lease, which contains a provision specifically obligating the lessee to clean up the property upon termination of the lease.

■ The claim under the OPA fails because the evidence, read in the light most favorable to the plaintiffs establishes that Harrison was not the "operator" of the facility, and secondly, that the OPA does not apply to the discharge or threatened discharge in Stafford County, Kansas. There is no evidence that Harrison played any role in the direct operation of those aspects of the oil reclaiming plant which led to the alleged discharges of oil. Plaintiffs instead have simply shown that Harrison had some general management responsibilities for the corporation that was the general partner of the company which leased the facility. Harrison specifically denied having any such actual control over the facility's environmental operation, and there is no evidence which would suggest this testimony is incorrect.

The OPA defines an "operator" of a facility in circular terms—an operator of an onshore facility is defined simply as a person "operating such onshore facility." 33 U.S.C. § 2701(26). In interpreting a similarly tautological definition of "operator" under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9707(a)(2), the Supreme Court has held that to be an "operator" within the meaning of the statute, the defendant "must manage, direct, or conduct operations specifically related to pollution." *United States v. Bestfoods,* 524 U.S. 51, 118 S.Ct. 1876, 1887, 141 L.Ed.2d 43 (1998). Since the plaintiffs have failed to make any showing with respect to Harrison's active control of the facility's environmental operations, judgment as a matter of law is appropriate.

■ Second, the court finds that the plaintiffs' attempt to apply the OPA to the discharge of a relatively limited amount of oil on the grounds of an oil processing plant in Kansas exceeds the intended scope of the statute. The OPA applies to incidents of discharge, or a substantial threat of discharge, of oil into "navigable waters," which is defined as "the waters of the United States, including the territorial sea." 33 U.S.C. § 2701(21).

The plaintiffs correctly note that a similar definition under the Clean Water Act, 33 U.S.C. §§ 1311 & 1362(12) (1997), has received a very expansive definition. *See, e.g., Quivira Min. Co. v. United States EPA,* 765 F.2d 126, 128 – 130 (10th Cir. 1985). At the same time, however, it is clear that the CWA's scope is not unlimited. In *Chemical Weapons Working Group, Inc. v. United States Dept. of the Army,* 111 F.3d 1485, 1489 (10th Cir.1997), the court rejected the plaintiff's argument that a discharge into the air is a discharge under the Clean Water Act, since "common sense dictates that Tooele's stack emissions constitute discharges into the air—not water—and are therefore beyond § 301(f)'s reach." The court held that, "[w]ithout determining the precise jurisdictional limits of the Clean Water Act [airborne] emissions 'lack the requisite nexus to navigable waters to render them subject to regulation under that statute.'"

The court finds persuasive the construction of the OPA recently given in *Rice v. Harken Exploration,* 89 F.Supp.2d 820 (N.D.Tex.1999). The court in that case found persuasive the plaintiff's arguments that the OPA and the CWA should receive similar constructions, but the court ultimately found that the OPA's legislative history required a narrower reading. As in the present matter, the court was deal-

ing with an alleged release of oil at an onshore facility some distance from any significant waterway. The court concluded that the defendant's oil fields were "fields located so far from oceans, bays, shores, or beaches that any discharge of oil is simply too attenuated a threat to 'navigable waters' to be covered by the OPA." 89 F.Supp.2d at 827. "[I]t is clear from the legislative history and the few published OPA decisions discussing 'navigable waters,'" the court found, "that application of the Act to an onshore oil production facility that is over 500 miles from any ocean or shoreline is an expansion that Congress did not intend." Id.

In the present case, the plaintiffs have presented evidence that some oil spilled onto the ground *at* the oil reclaiming plant. The spills were miles from any stream. There is absolutely no evidence the oil has migrated off the property. There is no evidence the oil has actually entered any stream, river, or arroyo, or other tributary of a navigable water. There is no evidence here, unlike some of the CWA cases, that any underground aquifer· is endangered. Instead, during their cross examination of an expert geologist, plaintiffs have simply raised the possibility that—given a flood of virtually biblical proportions, it was conceivable that (to use the geologist's term) a "molecule" of the oil might reach the Arkansas River. While the OPA's definition of "navigable waters" should not be too narrowly construed, to apply the statute under these circumstances would be to render the requirement of an actual or threatened discharge into "navigable waters" to be a meaningless surplusage.

■ With respect to the plaintiffs' claim under Kansas law, the plaintiffs have suggested alternately that Harrison is individually liable on the lease either under the principle of piercing the corporate veil, or that Harrison should be deemed a partner under the principle of partnership by es-

toppel. The plaintiffs have placed particular emphasis on the former, rather than the latter, approach.

■ Under Kansas law, the ability to pierce the corporate veil should be used "reluctantly and cautiously." *Dean Operations, Inc. v. One Seventy Associates*, 257 Kan. 676, 683, Syl. ¶ 1, 896 P.2d 1012 (1995). In that case, the Kansas Supreme Court recognized ten factors as useful guidelines in making the decision to pierce the corporate veil:

> (1) whether the parent corporation owns all or a majority of the capital stock of the subsidiary; (2) whether the corporations have common directors or officers; (3) whether the parent corporation finances the subsidiary; (4) whether the parent corporation subscribed to all of the capital stock of the subsidiary or otherwise causes its incorporation; (5) whether the subsidiary has grossly inadequate capital; (6) whether the parent corporation pays the salaries or expenses or losses of the subsidiary; (7) whether the subsidiary has substantially no business except with the parent corporation, or no assets except those conveyed to it by the parent corporation; (8) whether in the papers of the parent corporation, and in the statements of its officers, the subsidiary is referred to as such or as a department or division; (9) whether the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation; and (10) whether the formal legal requirements of the subsidiary as a separate and independent corporation are not observed.

257 Kan. at 683, 896 P.2d 1012 (citing *Fish v. East*, 114 F.2d 177, 191 (C.C.A.10 (Colo.) 1940)).

The plaintiffs have made no attempt to apply these individual factors to the facts of the present case. And there is no basis

in the evidence for their application so as to pierce the corporate veil. There is no evidence that Oil Reclaiming Company, Inc. was grossly underfunded. There is no evidence that the formal legal requirements of the corporate entity were ignored. When Harrison made a loan to the company, a note documenting the loan was executed. There is no evidence that Harrison used Oil Reclaiming Company, Inc. to promote "fraud, illegality, or injustice." *Dean Operations,* 257 Kan. at 681, 896 P.2d 1012. Plaintiffs have shown merely that Harrison, as the vice-president of the corporation, engaged in acts typical of those in his position: he sent some checks to the lessors, as he was empowered to do; he signed some company documents, and he participated in some decision-making regarding the company, in consultation with the other company officers.

■ As noted earlier, the plaintiffs place more reliance on the theory of partnership by estoppel, with particular emphasis on the early case of *Rizer & Waters v. James,* 26 Kan. 221 (1881). Based upon that decision, the plaintiffs argue that it is sufficient to impose individual liability upon Harrison so long as, in any respect, he held himself out as a partner of Oil Reclaiming Company, Ltd., even if no person ever relied upon such representation.

However, Kansas appears to have generally and consistently required reliance as an element of partnership by estoppel. In *Phillip Van Heusen, Inc. v. Korn,* 204 Kan. 172, 178, 460 P.2d 549 (1969) the court stressed the long line of cases under which the court had "consistently applied the rule that one may estop himself from denying his liability as a partner, where such relationship does not exist in fact, by holding himself out as such, or by negligently permitting one with whom he is engaged in business to do so." That reliance is an element of this rule, however, may be seen in the formal statement of the rule in the court's official syllabus, where the court wrote:

> A person may estop himself from denying his liability as a partner, where such relationship does not exist in fact, by holding himself out as such, or where his course of conduct and representations leads another to believe he is a partner, *and the party misled extends credit in reliance thereon.*

204 Kan. at 172, syl. ¶ 3, 460 P.2d 549 (emphasis added). See also *Muse v. Baker,* 216 Kan. 788, 533 P.2d 1234 (1975). Similarly, in *Goetz v. Howland,* 139 Kan. 1, 30 P.2d 101 (1934) the court noted evidence that "[o]ne of the partners of plaintiff testified he extended the credit to the pool hall only on the credit of Charles Howland." The court held that "Where one has held himself out as a partner in a business concern *and credit has been extended to the concern on the credit of one who held himself out as a partner,* that person is liable for all the debts of the partnership." Syl ¶ 1 (emphasis added). In *John Deere Plow Co. v. Klaurens,* 153 Kan. 151, 109 P.2d 98 (1941), the court approved a jury instruction requiring the jury to find not only that the defendant held himself out as a partner, but that "the plaintiff extended credit to the [defendant] in good faith relying upon the signatures of the [defendant] to said contracts." 109 P.2d at 100. See *Woodward, Faxon & Co. v. Clark,* 30 Kan. 78, 2 P. 106 (1883) (plaintiffs relied on representation of partnership to sell goods on credit).

As noted earlier, in their argument in support of imposing individual liability on Harrison regardless of reliance, the plaintiffs place particular stress on the Kansas Supreme Court's opinion in *Rizer & Waters v. James,* 26 Kan. 221 (1881). In that case, the court wrote:

> We perceive no material error in the instructions given by the court, as the facts clearly show that, if Waters was

not an actual partner, he was held out as such with his own assent or connivance. If this be true, he is responsible to every creditor or customer of the partnership, even in the absence of any evidence that the particular creditor bringing the action was misled thereby.

The court finds that there are good reasons to distinguish *Rizer,* and concludes it does not establish the generally applicable rule in Kansas. First, the decision, or at least cited portion of it, does not seem to have ever been followed by any other Kansas decision. As noted earlier, there are a large number of other Kansas cases which stress that reliance is an element of partnership by estoppel. In contrast, the court has only found one other case which even mentions *Rizer* in connection with this subject—*Goetz v. Howland*—and, as noted earlier, the court in that decision proceeded to conclude in its official syllabus that partnership by estoppel arises when there is holding out and reliance by an extension of credit.

Second, the facts in *Rizer* make it unusual. In that case, the plaintiffs provided evidence that the defendant had allowed or permitted a newspaper advertisement listing the members of the alleged partnership. There was evidence, the court noted, "of the common report and reputation in the community as to who comprised the firm of Robert O. Rizer & Co." 26 Kan. at 221. Thus, the "holding out" in *Rizer* was directed not at any particular third person, but at the public generally.

Finally, the Kansas Supreme Court has subsequently affirmatively indicated that reliance is an element of partnership by estoppel. Indeed, it has directly stated that the relationship will not exist in the absence of reliance. In *Rider v. Hammell,* 63 Kan. 733, 739, 66 P. 1026, 1027 (1901), the court wrote:

> The law is now well settled that where a person loans or advances money or goods to another, to be invested in some business or enterprise, the lender to share in the profits as or in lieu of interest on, or in repayment of, such loans or advance, it does not constitute a partnership. **Neither will it constitute a partnership as to third persons unless** the acts of the parties in furtherance of the agreement between themselves amount to such a holding of themselves out as partners **as that third persons are misled into a reasonable belief that a partnership exists in fact.**

(Emphasis added). The court found that the agreement between the defendants did not create a partnership. Nor, it then concluded, did a partnership by estoppel exist in the case, because there was no reliance on any holding out by the plaintiffs:

> If Rider had held himself out as, or induced Hammell & McCarty to believe that he was, a partner, or had negligently permitted McCarty to do so, and the latter had furnished the coal to E.P. McCarty with that understanding, Rider would be estopped to say that he was not liable as a partner. But no such facts are claimed in this case. It is stipulated that the coal was sold to McCarty on his individual credit, without any knowledge whatever that Rider was interested in the machine. Rider had, therefore, done nothing himself, nor had he by his negligence permitted McCarty to do anything, that would induce Hammell & McCarty to believe that he was a partner, or which would estop him to say that he was not a partner.

*Id.* at 1028.

Again, in *Clark v. Crouse,* 130 Kan. 177, 180, 285 P. 577 (1930), the court wrote:

> If a party permits his name to be used as a partner or by his statements and conduct indicates to the public that he is

a partner, he will be estopped to deny responsibility. If he holds himself out as a partner, he may be held liable as far as third parties are concerned, although he may not in fact be a partner. This rule is based on the ground of estoppel, but is not to be applied when the third party has no knowledge of the holding out and who was not misled by the appearance produced.

And finally, in *State ex rel. Carlton v. Triplett*, 213 Kan. 381, 387, 517 P.2d 136, 141 (1973) (citations omitted), the court concluded that "[t]here is no estoppel here, because the essential elements of a representation and reliance thereon are absent. The commissioner does not and doubtless cannot claim any reliance on any representation made by the appellees."

Here, the plaintiffs have conceded there was no reliance on the alleged acts of "holding out" by Harrison—which involve Harrison's signature of Annual Partnership reports on the "General Partner" line and his sending lease checks to the plaintiffs. None of the plaintiffs saw the partnership reports. The lease payments made by Harrison were issued long after the lease was entered into. And each of the plaintiffs admitted during testimony that it made no difference to them who or in what capacity the checks were signed.